STATE OF NORTH CAROLINA v. ROGER LEE FREEMAN

No. 160A86

(Filed 2 June 1987)

1. **Rape and Allied Offenses § 4.1— evidence relevant to show victim's fear**

    A rape victim's testimony that defendant fumbled with ropes hanging from a pipe but never tied her up, that she was terrified and thought she was going to die, and that after she and defendant returned to her apartment from an aborted robbery, she couldn't believe she was still alive was relevant on the issue of fear, and its extent, induced in the victim by defendant in connection with the rape.

2. **Criminal Law § 86.1— hairs and fibers on incriminating articles—cross-examination of defendant—relevance for impeachment**

    The State's cross-examination of defendant concerning how certain hairs and fibers could have been found on articles linking defendant with the commission of a kidnapping and rape did not call for defendant to testify as an expert or assume the truth of the State's evidence and was properly permitted to challenge the credibility of defendant's denial of guilt and his testimony tending to support this denial. N.C.G.S. § 8C-1, Rule 611(b).

3. **Criminal Law §§ 146.1, 146.3— double jeopardy—failure to object at trial—waiver of issue on appeal—exercise of supervisory jurisdiction**

    Defendant waived his right to raise on appeal the issue of whether his conviction and sentencing for both first degree kidnapping and first degree rape violated the prohibition against double jeopardy where he failed at trial to move to arrest judgment in either the kidnapping or rape convictions and did not otherwise object to the convictions or sentences on double jeopardy grounds. However, the Supreme Court elected to review the issue on appeal in the exercise of its supervisory power over the trial divisions, N. C. Const. art. IV, § 12, N.C.G.S. § 7A-32, and pursuant to Rule 2 of the N. C. Rules of App. Procedure.

4. **Criminal Law § 27.5; Kidnapping § 1— first degree kidnapping—first degree rape—double jeopardy**

    Defendant's conviction and sentencing for both first degree kidnapping and first degree rape violated the constitutional prohibition against double jeopardy where the trial court told the jury it would have to find, among other things, that the kidnapping victim "had been sexually assaulted" in order to convict defendant of first degree kidnapping; there was evidence of the rape for which defendant was both indicted and convicted, a first degree sexual offense for which defendant was indicted but not convicted, and another rape for which defendant was not indicted; the trial court did not specify in its instructions to the jury in the kidnapping case which of these sexual assaults the jury might use to satisfy the "sexual assault" element of first degree kidnapping; and it cannot be said that the jury's verdict of first degree kidnapping was based upon a sexual assault other than the rape for which defendant was convicted.

**5. Criminal Law § 166— exceptions not supported by argument in the brief**

   Exceptions brought forward in defendant's brief but for which no argument or authority is stated are deemed abandoned. Rules of App. Procedure 28(a), (b)(3).

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment imposing life sentence after defendant's conviction of first degree rape (No. 84CRS5368) at the 13 January 1986 session of Superior Court, GUILFORD County, High Point Division, *Judge John* presiding. Defendant's motion to bypass the Court of Appeals in No. 84CRS5366 (nonfelonious larceny) and No. 84CRS5369 (first degree kidnapping) allowed. Argued in the Supreme Court on 9 February 1987.

*Lacy H. Thornburg, Attorney General, by Wilson Hayman, Assistant Attorney General, for the state.*

*Robert L. McClellan, Assistant Public Defender, for defendant appellant.*

EXUM, Chief Justice.

Questions presented on this appeal are whether the trial court erred by (1) admitting certain testimony by the prosecuting witness; (2) permitting certain cross-examination of the defendant; (3) accepting guilty verdicts and imposing sentences for both first degree kidnapping and first degree rape; and (4) denying defendant's motion to dismiss all charges for insufficiency of the evidence. We find merit in defendant's contentions as to question three. We conclude there was no other error in defendant's trial and convictions. We remand for further sentencing proceedings consistent with this opinion.

I.

This is defendant's second appeal. On his first appeal this Court ordered a new trial for error in the jury selection process. *State v. Freeman*, 314 N.C. 432, 333 S.E. 2d 743 (1985). At his second trial defendant was found guilty of misdemeanor larceny, first degree rape and first degree kidnapping. He was acquitted of first degree sexual offense, second degree burglary and robbery with a firearm.

At defendant's second trial the state's evidence tended to show as follows:

On 24 March 1984 the victim had returned to High Point, North Carolina, from a vacation. She arrived at her apartment building shortly after 10 p.m., got out of her car and began removing her luggage. A man she identified as defendant, Roger Lee Freeman, approached her, pointed a gun at her head and told her to come with him.

Defendant led the victim at gunpoint into a back room in the basement of a nearby abandoned house. He had her sit in a chair while he fumbled with some ropes hanging from a pipe. Defendant said, "Before I kill you, I'm going to rape you." He ordered her to lie down and to remove her clothes. Holding a knife to her throat, defendant had vaginal intercourse with the victim. Despite her pleas to spare her life and her offer to give him money, defendant told her she was going to die. He raised his knife and brought it down very quickly but stopped just above her chest. Defendant forced the victim to perform oral sex on him while he held the gun at her head. He raped her a second time at knifepoint.

After allowing the victim to dress, defendant inquired about obtaining money by using her bank card at a 24-hour bank machine. Defendant led the victim back to her apartment and ordered her to get the bank card. Defendant, pointing a pistol at the victim from a position inside his coat pocket, had her drive to a bank machine, where she withdrew one hundred dollars and gave the money and card to defendant.

They went back to the victim's apartment. Defendant searched the entire apartment, including the victim's jewelry box located in the bedroom. Discovering that the victim worked for Domino's Pizza, defendant ordered her to get dressed and drive there with him. The victim persuaded defendant not to attempt a robbery. After they returned to the parking area of the victim's apartment, defendant released her upon her promise that she would not tell anyone what had happened.

Once safely inside her apartment, the victim called the police, who arrived shortly and took her to the hospital for examination. The emergency room physician performed a vaginal examination on the victim and found live sperm present.

After returning to her apartment, the victim discovered that a gold necklace and bracelet kept in her jewelry box were missing.

The victim gave a detailed statement to police describing her assailant and the events of the evening, which statement corroborated her testimony at trial.

Defendant was arrested on Monday, 26 March 1984, after fleeing from police officers at the bus station in High Point. A knife, gun, two gold necklaces and a bracelet were found in his possession.

Two forensic chemists with the State Bureau of Investigation testified that most of the hairs discovered on a black seat cover and yellow blanket taken from the basement room in the abandoned house were consistent with pubic and head hair samples from defendant and the victim. Moreover, a button found in that room "most likely" had originated from the victim's shirt, and an examination of defendant's clothing indicated he had come into contact with the black seat cover found in the room.

Defendant testified on his own behalf. He said he arrived in High Point on Friday, 23 March 1984, from Pulaski, Virginia, and spent most of that day and the next at his sister's home in High Point. He went to Abe's Bar at around 8:00 p.m., Saturday, 24 March 1984. There he saw the victim, who was selling "speed" and cocaine. When she dropped her canvas bag during a confrontation with another woman, defendant took cocaine from the bag while another patron of the bar removed a green change purse containing LSD. Defendant proceeded to consume the cocaine and LSD.

Defendant denied having any further contact with the victim at any time. He testified that he ran when approached by police officers on Monday, 26 March 1984, because he knew he was carrying a concealed weapon and had been charged in Virginia with violating the terms of his probation. Defendant said he obtained the two gold chains from the victim's change purse while in Abe's Bar.

Upon his convictions as set out above, defendant was sentenced to terms of two years for larceny, twelve years for first

degree kidnapping, and life imprisonment for first degree rape, all sentences to run consecutively.

## II.

[1] Defendant first complains that the trial court erred by allowing certain testimony by the prosecuting witness. She was permitted to testify as follows:

Q. What were you asking?

A. What he was going to do; would he please just leave me alone.

Q. Did he respond at all to that?

A. No. He then reached up toward the ceiling. I could see what looked like pieces of rope hanging from a pipe. He fumbled with the ropes, but he never brought the ropes down and never tied me up.

Defendant's motion to strike the last answer was denied. Later, after the victim testified defendant told her she was going to die, the victim was permitted to testify:

Q. What were you thinking at that time . . .?

A. I was terrified and thought I was going to die.

Again defendant's motion to strike was denied. Finally, defendant complains of the following colloquy concerning the time after the victim returned to her apartment following the aborted robbery at Domino's Pizza:

Q. And what were you thinking at that time?

A. I got inside and I couldn't believe what had just happened. And I couldn't believe I was still alive.

Defendant's objection came after the response and he made no motion to strike.

We find no error in the admission of any of this testimony. Defendant, without the citation of any pertinent authority, contends that by the first passage the witness was wrongly permitted to paint a "worst case scenario" and to give the jury the impression, unsupported by competent evidence, that defendant

intended to tie her up. Next defendant argues that the last two portions of testimony amounted to irrelevant expressions of the witness's emotional feelings and to improper conclusions that defendant "attempted to kill her." We disagree.

"[I]n a criminal case, every circumstance which is reasonably calculated to throw light upon the alleged crime is admissible." *State v. Price*, 301 N.C. 437, 452, 272 S.E. 2d 103, 113-14 (1980). Rape is sexual intercourse by force and without the victim's consent. N.C.G.S. § 14-27.3(a)(1) (1986); *State v. Alston*, 310 N.C. 399, 312 S.E. 2d 470 (1984); *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968). Threats of serious bodily harm which reasonably induce fear may constitute the requisite force. *State v. Hall*, 293 N.C. 559, 238 S.E. 2d 473 (1977); *State v. Roberts*, 293 N.C. 1, 235 S.E. 2d 203 (1977); *State v. Primes*, 275 N.C. 61, 165 S.E. 2d 225 (1969); *State v. Overman*, 269 N.C. 453, 153 S.E. 2d 44 (1967).

All of the challenged testimony was relevant on the issue of the fear, and its extent, induced in the victim by defendant in connection with the rape charge.

As to the last portion of the challenged testimony, we note further that defendant waived his right to object to it on appeal by not objecting to the question or moving to strike the response at trial. N.C.G.S. § 8C-1, Rule 103 (1986); *State v. Burgin*, 313 N.C. 404, 329 S.E. 2d 653 (1985).

## III.

[2] Defendant next contends the trial court erred in allowing the state to cross-examine him concerning how certain hairs and fibers could have been found on articles linking defendant with the commission of the offenses. The trial transcript reveals the following with regard to this assignment of error:

> Q. I see. Could you tell us how one of [the victim's] pubic hairs that's consistent with her pubic hairs got on that black seat cover in the basement of that abandoned house next door to where she lived?
>
> A. No, sir, I don't.
>
> Q. You don't know that either?
>
> A. I got an idea in my own mind.

State v. Freeman

Q. You've got an idea in your own mind, but you don't know?

A. Yes, sir. I think they were placed there by Mr. Tobin.

Q. I see. So you think Mr. Tobin went to [the victim], plucked one of her pubic hairs and dropped it on that black seat cover?

MR. MCCLELLAN: Objection, Your Honor.

THE COURT: Objection overruled.

A. I don't know what—I don't know what he did or what he didn't do. I tried to get—in the line-up—I mean, when Mr. Tobin was in the office, you know, he started talking to me. He read me these statements and everything, and then a police officer came up and was question and answer.

Q. So, getting back to my original question, are you saying that Detective Tobin got one of [the victim's] pubic hairs and laid it on that black seat cover?

A. I'm saying that if any of my hairs—

MR. MCCLELLAN: Objection, Your Honor.

THE COURT: Overruled. Go ahead.

Q. Go ahead.

A. I'm saying that if any of my hairs and stuff or anything that might be consistent with mine was put on there.

Q. Yes, sir.

A. It'd come off of my clothes or off of me when I changed clothes.

Q. I see. But you had your underwear on?

A. Yes, sir.

Q. And you were leaning against the chair when you were changing clothes; is that right?

A. Sir?

Q. And you were leaning against a chair when you were changing your clothes; is that right?

A. Only when I was taking my shoes off.

Q. Uh-huh. And you never saw a yellow blanket, though; right?

A. No, sir. You could not distinguish any colors down there.

. . . .

Q. All right, sir. Could you tell us how all three of those types of fibers from that black seat cover got on her clothes?

A. No, sir, I can't.

    MR. MCCLELLAN: Objection, Your Honor.

    THE COURT: Objection overruled.

A. Not unless she had been down there.

Q. Pardon me?

A. Not unless she had been down there. I don't know. But she was not there with me nor of anyone else that I know of.

Defendant claims the questions posed improperly required him, a layman, to draw conclusions and give opinions as if he were an expert. He further contends the questions improperly assumed the truth of the state's evidence which defendant was called on to explain. These arguments are without merit.

Under our accusatory system of criminal justice a defendant may never be required to take the stand and testify in his own behalf. If he does not choose to so testify, he may not be called upon to explain incriminating evidence offered against him by the state. But when a defendant chooses to testify in his own defense he subjects himself to cross-examination "on any matter relevant to any issue in the case, including credibility." N.C.G.S. § 8C-1, Rule 611(b) (1986).

"In North Carolina the substantive cross-examination is not confined to the subject matter of direct testimony plus impeachment, but may extend to any matter relevant to the issues." 1 Brandis on North Carolina Evidence § 35 (1982). Rule 611(b) of the North Carolina Rules of Evidence rejects the more restricted approach to cross-examination found in Federal Rule 611(b) and

adopts the traditional, broader North Carolina cross-examination rule. Commentary, N.C. R. Evid. 611(b).

Cross-examination may be employed to test a witness's credibility in an infinite variety of ways. "The largest possible scope should be given," and "almost any question" may be put "to test the value of his testimony." 1 Brandis on North Carolina Evidence § 42 (1982). The range of facts that may be inquired into is virtually unlimited except by the general requirement of relevancy and the trial judge's discretionary power to keep the examination within reasonable bounds. *State v. Burgin,* 313 N.C. 404, 329 S.E. 2d 653; 1 Brandis on North Carolina Evidence § 38 (1982).

Defendant here testified in his own behalf and denied his guilt. It was thus appropriate for the state to ask him to explain, if he could, the state's evidence which was inconsistent with this denial. This kind of cross-examination properly went to the credibility of defendant's denial of guilt and his testimony tending to support this denial. The cross-examination neither called for defendant to testify as an expert nor did it assume the truth of the state's evidence. Defendant's own responses to the questions refute these propositions. He explained the incriminating evidence at one point in his testimony by saying it must have been placed there by an agent of the state. The cross-examination properly challenged defendant's credibility, which ultimately was a question for the jury.

IV.

By his third assignment of error, defendant contends the trial court permitted him to be unconstitutionally convicted and sentenced twice for the same offense when it allowed his convictions for both first degree kidnapping and first degree rape to stand and when it sentenced him on both offenses. This is so, defendant argues, because under the trial court's jury instructions the jury could have used the rape offense to satisfy the "sexual assault" element of first degree kidnapping. To permit defendant's convictions for both crimes to stand and to sentence him for both crimes under these instructions means, defendant argues, that he has, or could have been convicted and punished twice for the rape. For thorough discussions of the law on this question, see *State v. Belton,* 318 N.C. 141, 347 S.E. 2d 755 (1986); *State v. Freeland,* 316

N.C. 13, 340 S.E. 2d 35 (1986); and *State v. Gardner*, 315 N.C. 444, 340 S.E. 2d 701 (1986).

[3] Defendant failed to raise this issue at trial. He did not at trial move to arrest judgment in either the rape or kidnapping convictions and did not otherwise object to the convictions or sentences on double jeopardy grounds. He has, therefore, waived his right to raise the issue on appeal. *State v. Dudley,* 319 N.C. 656, 356 S.E. 2d 361 (1987); *State v. Mitchell*, 317 N.C. 661, 346 S.E. 2d 458 (1986); *State v. McKenzie*, 292 N.C. 170, 232 S.E. 2d 424 (1977).

We elect, nevertheless, in the exercise of our supervisory power over the trial divisions, N.C. Const. art. IV, § 12; N.C.G.S. § 7A-32, and pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, to review this issue on appeal. *See State v. Stanley*, 288 N.C. 19, 215 S.E. 2d 589 (1975); *State v. Hewitt*, 270 N.C. 348, 154 S.E. 2d 476 (1967).

[4] On the merits of this issue defendant relies on *State v. Belton*, 318 N.C. 141, 347 S.E. 2d 755, and *State v. Freeland*, 316 N.C. 13, 340 S.E. 2d 35. Defendant maintains that under these cases his convictions of first degree kidnapping and first degree rape cannot both stand. There was here, as there was in *Belton*, evidence of an unindicted sexual offense (a rape in addition to the rape for which defendant was indicted and convicted). There was also evidence of a first degree sexual offense for which defendant was indicted but not convicted and the rape for which defendant was both indicted and convicted. The trial court did not specify in its instructions to the jury in the kidnapping case which of these sexual assaults the jury might use to satisfy the "sexual assault" element of first degree kidnapping. It simply told the jury it would have to find, among other things, that the kidnapping victim "had been sexually assaulted" in order to convict defendant of first degree kidnapping. The state concedes, and we agree, that under these circumstances *Belton* controls this issue in defendant's favor.

As we did in *Belton*, therefore, we remand the rape (84CRS5368) and kidnapping (84CRS5369) cases to the trial court for further proceedings. On remand the trial court may either arrest judgment on the first degree kidnapping charge and enter a verdict of guilty of second degree kidnapping, or it may arrest

State v. Freeman

judgment on the first degree rape conviction and let the first degree kidnapping conviction stand. The trial court will then re-sentence defendant accordingly.

## V.

[5] By his final assignment of error, defendant contends the trial court erred in denying his motion to dismiss at the close of all the evidence and in entering judgments against defendant on the ground the evidence was insufficient to support any of his convictions. In support of this assignment of error, defendant merely "requests the Court to review the evidence and record for any other prejudicial error committed" at trial. The law is clear that exceptions brought forward in defendant's brief but for which no argument or authority is stated are deemed abandoned. *State v. Samuels*, 298 N.C. 783, 260 S.E. 2d 427 (1979); N.C. R. App. P. 28(a), (b)(3). Therefore, we need not address this issue.

Nevertheless, it is clear the evidence is sufficient to support all of defendant's convictions. The victim's testimony as well as the physical evidence presented at trial tended to show that defendant unlawfully removed the victim from one place to another without her consent, forced her at gunpoint into an abandoned house and coerced her under threat of death to engage in sexual intercourse without her consent.

This assignment of error is overruled.

CONCLUSION

In the nonfelonious larceny case (84CRS5366) we find no error. In the first degree rape (84CRS5368) and first degree kidnapping (84CRS5369) cases we find no error in the trial, but we remand these cases for new sentencing proceedings consistent with this opinion.

Case No. 84CRS5366—no error.

Case Nos. 84CRS5368 and 84CRS5369—remanded for new sentencing proceedings.