STATE OF NORTH CAROLINA v. CLARENCE LEE WALKER

No. COA99-720

(Filed 15 August 2000)

## 1. Rape— attempted first-degree—insufficiency of evidence

The trial court erred in denying defendant's motion to dismiss the charge of attempted first-degree rape because: (1) the evidence of defendant's attempt is, at most, ambiguous; (2) the only suggestions of a sexual component was defendant's persistent attempts to have the victim roll onto her stomach, which was not substantial evidence allowing a reasonable conclusion that defendant had an intent to gratify his passion on the victim notwithstanding her resistance; and (3) there was insufficient evidence that defendant manifested, by an overt act, a sexual motivation for his attack on the victim.

## 2. Evidence— police officer testimony—victim's statement consistent

The trial court did not commit plain error by allowing a police witness to testify that the victim's statement to him about the attack was consistent with statements she gave to other officers and with her trial testimony, without requiring that the officer also testify about the contents of the statement, because: (1) the jury had already heard the victim's testimony, one officer's testimony reciting the victim's statement to him, and a second officer's similar recitation of the statement the victim made to him; (2) the victim's statements to these two officers were generally consistent with each other and with her trial testimony; (3) defendant did not challenge either officers' testimony through cross-examination; and (4) consequently, any error in allowing a third police witness to state his conclusion that the victim's pretrial statement to him was consistent with her testimony and her statements to other officers was harmless.

## 3. Evidence— cross-examination—underlying facts of previous conviction—objection sustained

Defendant was not prejudiced by the State's cross-examination of him about underlying facts of his previous conviction for armed robbery, specifically whether he wore the same clothes to commit that crime as he wore to attack the victim in this case, because the trial court sustained defendant's objection

STATE v. WALKER

[139 N.C. App. 512 (2000)]

and no motion was made to strike defendant's fragmentary response.

**4. Evidence— cross-examination—prior testimony in trial— credibility**

The trial court did not commit plain error by allowing the prosecutor to cross-examine defendant about testimony provided by a witness for the State earlier in the trial, because: (1) the prosecutor did not assume that the witness's testimony was truthful, but instead pointed out that defendant's testimony contained factors that were additional to and sometimes inconsistent with the witness; and (2) this probing was appropriate to challenge defendant's credibility.

**5. Evidence— attorney testimony—defendant's prior charges—use of other names**

The trial court did not commit plain error by allowing an attorney who had represented defendant on prior charges to testify at the habitual felon stage of his trial about defendant's use of other names, because: (1) the conviction and the name used by the person convicted were matters of public record and not matters divulged in confidence; (2) the attorney's testimony only confirmed that defendant was the same individual whom he had previously represented on a felony charge and who had been convicted of that felony; (3) a clerk of court who was present at the prior conviction and who recalled defendant would have been equally capable of establishing a foundation to admit the judgment from the earlier case; and (4) the prosecutor could have shown the attorney the judgment from the earlier conviction and asked if he had been involved in that case without ever saying the name used by defendant from the earlier conviction.

**6. Appeal and Error— mootness—underlying conviction vacated**

Although defendant argues he was subjected to double jeopardy by being convicted of attempted first-degree rape and assault with a deadly weapon inflicting serious injury, this issue is moot because the Court of Appeals vacated the attempted first-degree rape conviction.

**7. Constitutional Law— effective assistance of counsel—no showing of a different result**

Although defendant alleges that he received ineffective assistance of counsel, defendant cannot show that there was a

reasonable probability that, even in the absence of the alleged deficiencies, a different result would have been obtained.

Appeal by defendant from judgments entered 6 January 1999 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 25 April 2000.

*Michael F. Easley, Attorney General, by Jane Ammons Gilchrist, Assistant Attorney General, for the State.*

*Clifford Clendenin O'Hale & Jones, LLP, by Walter L. Jones, for defendant-appellant.*

EDMUNDS, Judge.

Defendant Clarence Lee Walker appeals his convictions of attempted first-degree rape and assault with a deadly weapon inflicting serious injury. We vacate the attempted rape conviction but find no error in the assault conviction.

The victim in this case was employed as a Deputy Clerk of Court of Guilford County, working in the courthouse in High Point. At approximately 9:30 a.m. on 31 March 1998, she went to the public restroom on the second floor of the courthouse. While in one of the stalls, she heard the men's restroom door open, then almost immediately heard the women's restroom door open. Unsure what was happening, she waited a moment before exiting the stall. As she walked toward one of the bathroom sinks, she saw a man, whom she later identified as defendant, standing against a wall peeking around a partition. He was wearing a yellow, hooded sweatshirt. Defendant turned off the lights in the bathroom, then came toward the victim, grabbed her by the shoulders or arms, and threw her to the floor. The victim landed on her buttocks and back but quickly turned onto her side.

Defendant also fell when he threw down the victim. She testified that "[w]hen I rolled over, he was laying completely on top of me. He was straddling me but he was laying—laying on me." While defendant tried to cover the victim's mouth with his right hand to stifle her screams, she kept moving her head to thwart his efforts. At the same time, defendant was striking the victim in her head and face with his left hand. Defendant said "shut up bitch" and told her to roll onto her stomach.

Because defendant continued to hit her and no one came to her aid, the victim stopped screaming and asked defendant what he

wanted. He responded that he wanted her to roll over onto her stomach. The victim added:

> His hands came away from my head area where they had been where he had been trying to hold my mouth and when he was beating me. His hands did come away. I felt them touch my side. And it may have just been his right hand touch my side.

The victim began screaming again, and defendant resumed beating her in the face and attempting to cover her mouth with his hand. After approximately one minute, defendant got up and ran away. The victim made her way out of the bathroom and was escorted to the district attorney's office. There, she gave Police Officer Brewer a description of her assailant including his height, weight, and clothing. In turn, the officer relayed the description over police radio.

Guilford County Mental Health case worker Arthur Carlton Montsinger (Montsinger) worked in the Mental Health Building beside the courthouse and was acquainted with defendant. Sometime between 9:30 and 10:00 a.m. on the morning of the assault, he saw defendant at the Mental Health Building. He was perspiring heavily and was wearing a "yellowish, gold" hooded sweatshirt, which matched the description provided by the victim. Defendant said that he had misplaced his Social Security card and asked Montsinger to take him to his aunt's house to retrieve it. They left the Mental Health Building in a county vehicle but were stopped by the police. Defendant was returned in a police car to the courthouse parking area. Officers removed defendant from the police car, and the victim, observing defendant from a vantage point in the courthouse, identified him as her assailant.

Defendant was arrested, waived his rights, and spoke with a police detective. He initially denied being at the courthouse, then changed his account and told the detective that he had been on the second floor of the courthouse. He said he had been near the public restrooms but denied going into the restrooms or touching the victim.

At trial, defendant testified that he came to the courthouse on the day of the assault and spoke to someone about obtaining a copy of his birth certificate. When he was told that it would cost $10.00, he left to see Montsinger. Defendant testified that he made his inquiry about his birth certificate on the first floor of the courthouse and that he never went to the second floor.

STATE v. WALKER

[139 N.C. App. 512 (2000)]

Defendant was convicted of attempted first-degree rape and assault with a deadly weapon inflicting serious injury. Thereafter, the jury found defendant to be an habitual felon. As to the charge of attempted first-degree rape, he was sentenced for the substantive offense alone and received a sentence of 313 to 385 months. The court also imposed a consecutive sentence of 168 to 211 months for committing assault with a deadly weapon inflicting serious injury while being an habitual felon. Defendant appeals.

I.

[1] Defendant first contends that the trial court erred in denying his motion to dismiss the charge of attempted first-degree rape based on insufficiency of the evidence. In ruling on such a motion, the trial court must view the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference. *See State v. Hall*, 85 N.C. App. 447, 452, 355 S.E.2d 250, 253 (1987). If the trial court then finds substantial evidence of each element of the offense, it must submit the case to the jury. *See id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted).

"In order to prove attempted first-degree rape, the State must prove that the defendant had the intent to commit the crime and committed an act which went beyond mere preparation, but fell short of actual commission of the first-degree rape." *State v. Montgomery*, 331 N.C. 559, 567, 417 S.E.2d 742, 746 (1992) (citation omitted). In the case at bar, because the evidence of defendant's overt behavior is quite clear, the only issue is defendant's intent at the time he attacked the victim. To prove intent to commit rape,

> [t]he State is not required to show that the defendant made an actual physical attempt to have intercourse . . . . The element of intent as to the offense of attempted rape is established if the evidence shows that defendant, at any time during the incident, had an intent to gratify his passion upon the victim, notwithstanding any resistance on her part.

*State v. Schultz*, 88 N.C. App. 197, 200, 362 S.E.2d 853, 855-56 (1987) (internal citations omitted), *aff'd per curiam*, 322 N.C. 467, 368 S.E.2d 286 (1988).

The defendant in *Schultz* was convicted of attempted second-degree rape. The evidence in that case indicated that the defendant

inveigled his way into the victim's home, then grabbed her from behind and asked her for money. On appeal, we noted that the defendant, who was behind the victim as they struggled, dragged her toward a bedroom, then reached over her shoulder, down her shirt, and touched her breasts. Affirming the conviction, this Court cited other cases where an attempted rape conviction was allowed to stand and noted that "[i]n each of these cases where the evidence of intent was found sufficient, the defendant manifested his sexual motivation by some overt act." *Id.* at 201, 362 S.E.2d at 856; *see State v. Whitaker*, 316 N.C. 515, 342 S.E.2d 514 (1986) (defendant verbalized his intent to commit cunnilingus with the victim); *Hall*, 85 N.C. App. 447, 355 S.E.2d 250 (defendant pulled the victim's shirt down and touched her breasts); *State v. Norman*, 14 N.C. App. 394, 188 S.E.2d 667 (1972) (defendant touched the victim on one of her breasts).

Defendant cites cases where this Court found insufficient evidence of intent to rape. In *State v. Brayboy*, 105 N.C. App. 370, 413 S.E.2d 590 (1992), the defendant and a co-defendant were fishing when they were joined by the victim and her boyfriend. The co-defendant shot and wounded the victim's boyfriend. When the victim walked toward the sound of the shot, the defendant "grabbed her from behind, put his hand over her mouth and pinned her to the ground." *Id.* at 372, 413 S.E.2d at 591. The defendant repeatedly told the victim to shut up or he would kill her and raised his fist as if to strike. The co-defendant approached the struggling victim and the defendant and said to the defendant, " 'Go on and do what you want to do with her.' " *Id.* However, the defendant never touched the victim's private parts, nor did she complain of being sexually assaulted. *See id.* In holding this evidence insufficient to support a charge of attempted rape, we said:

> There is no evidence that defendant forced himself upon her in a sexual manner or indicated that it was his intent to engage in forcible, nonconsensual intercourse with her. The evidence merely shows that defendant grabbed [the victim], forced her to the ground, pinned her arms behind her back and then straddled her following [co-defendant's] shooting [the victim's boyfriend]. The only evidence which could give any indication that defendant might have intended to commit some sexual act upon [the victim] is [co-defendant's] statement, "Go on and do what you want to do with her." This evidence allows one only to speculate exactly what defendant may have intended to "do" . . . .

*Id.* at 374-75, 413 S.E.2d at 593.

In *State v. Nicholson*, 99 N.C. App. 143, 392 S.E.2d 748 (1990), the defendant first came to the victim's door and asked for a bandage, then returned twenty minutes later seeking matches. While the victim was trying to help, the defendant entered the victim's house, grabbed her around the neck and shoulder, and pointed a pistol at her head. He threatened to kill her and forced her to walk to another room, where the victim fell to the floor and asked the defendant why he was attacking her. The defendant did not respond but placed his hands under her legs, picked her up, and carried her toward a bedroom. When the victim screamed, she either fell or was dropped, and the defendant "slammed himself down on top of her." *Id.* at 145, 392 S.E.2d at 750. The defendant then began to cry, and the victim ran outside. The defendant followed, telling her that he was sorry, and handed her the gun. This Court vacated the defendant's conviction for attempted first-degree rape because we could not "discern any evidence that would give rise to a reasonable inference that the attack on the victim was sexually motivated or that defendant at any time had the intent to gratify his passion on the victim." *Id.* at 146, 392 S.E.2d at 750.

In the case at bar, the evidence of defendant's intent is, at most, ambiguous. As vicious as the attack was, the only suggestion of a sexual component was defendant's persistent attempts to have the victim roll onto her stomach. Defendant's behavior allows speculation as to why he wanted the victim prone rather than supine or on her side. However, this behavior is not substantial evidence allowing a reasonable conclusion that defendant had an intent to gratify his passion on the victim notwithstanding her resistance; like *Brayboy* and *Nicholson*, and unlike *Schultz*, *Whitaker*, *Hall*, and *Norman*, there was insufficient evidence that defendant manifested, by an overt act, a sexual motivation for his attack on the victim. Accordingly, the trial court erred in failing to dismiss this count.

## II.

[2] Defendant argues that the trial court erred by allowing a police witness to testify that the victim's statement to him about the attack was consistent with statements she gave to other officers, and with her trial testimony. The questioned testimony is as follows:

[DISTRICT ATTORNEY:] Detective O'Connor, while [the jury] is looking at [the yellow sweatshirt], we'll do two things at once. You say you went to the hospital and got a statement from the victim . . . ?

**STATE v. WALKER**

[139 N.C. App. 512 (2000)]

[WITNESS:] Yes, sir.

[DISTRICT ATTORNEY:] And was the statement she gave you substantially consistent with the statement she had given in court and the one you heard she gave to Officer Brewer?

[WITNESS:] Yes, it is.

[DISTRICT ATTORNEY:] And the one she gave to Officer Willis?

[WITNESS:] Yes, sir.

[DISTRICT ATTORNEY:] That's all the questions I have of this witness at this time, Your Honor.

Because defendant failed to object to this testimony, we review for plain error. *See* N.C. R. App. P. 10(b)(1).

> "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has ' "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" ' or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings' or where it can be fairly said 'the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.' "

*State v. Black*, 308 N.C. 736, 740-41, 303 S.E.2d 804, 806-07 (1983) (alterations and ellipsis in original) (citations omitted).

Assuming without deciding that the trial court erred in admitting this testimony without requiring that the officer also testify about the contents of the statement, *see State v. Norman*, 76 N.C. App. 623, 334 S.E.2d 247 (1985) (holding that trial court erroneously admitted investigator's testimony that co-conspirator's statement to investigator was consistent with the co-conspirator's trial testimony, where contents of statement not presented to jury), there was no plain error. The challenged testimony was the final evidence presented before the State rested its case in chief. The jury already had heard (1) the victim's testimony, (2) Officer Brewer's testimony reciting the victim's statement to him, and (3) Officer Willis' similar recitation of the statement the victim made to him. The victim's statements to these

officers were generally consistent with each other and with her trial testimony. Defendant did not challenge either officers' testimony through cross-examination. Consequently, any error in allowing a third police witness to state his conclusion that the victim's pretrial statement to him was consistent with her testimony and her statements to other officers was harmless. This assignment of error is overruled.

### III.

[3] Defendant argues that the trial court erred by allowing the State to cross-examine defendant about "certain underlying facts of previous convictions." While the State was cross-examining defendant about a past conviction for armed robbery, the prosecutor attempted to ask defendant whether he wore the same clothes to commit the armed robbery as he wore to attack the victim. Although defense counsel objected, the witness began to respond by saying, "I wasn't wearing the same—" before the trial court interceded to sustain the objection. When both the trial court and the prosecutor informed defendant he did not have to answer the question, he responded, "I'd like to answer it." Nevertheless, the trial court instructed the prosecutor to ask another question, and the district attorney's subsequent questions proceeded in a different direction.

The trial court sustained defendant's objection, and no motion was made to strike defendant's fragmentary response. Consequently, defendant was not prejudiced. *See State v. Call*, 349 N.C. 382, 508 S.E.2d 496 (1998). This assignment of error is overruled.

### IV.

[4] Defendant argues that the trial court erred by allowing the prosecutor to cross-examine defendant about testimony provided by a witness for the State earlier in the trial. Mental health case worker Montsinger testified as part of the State's case in chief that he first saw defendant between 9:30 and 10:00 a.m. the morning of the assault and that he and defendant were stopped by police as they drove out of the Mental Health Building parking lot. However, when defendant took the stand, he testified that he saw Montsinger between 8:15 and 8:30 that morning and that Montsinger drove him to the "south side" where they picked up some other individuals before returning to the Mental Health Building. While cross-examining defendant, the prosecutor asked defendant such details of his drive with Montsinger as the names and descriptions of those individuals Montsinger picked

up, then asked defendant if Montsinger had testified about transporting these individuals. No objection was made, and defendant responded by pointing out that the prosecutor had not asked Montsinger about those details. After some further fencing, the prosecutor proceeded to another line of questions.

In the absence of an objection, we again review for plain error. Defendant contends that this cross-examination was improper under the hearsay rule. *See* N.C. Gen. Stat. § 8C-1, Rule 802 (1999). However, Montsinger's original testimony was provided while testifying at the trial, so any classification of that testimony as hearsay is doubtful. *See* 2 Kenneth S. Broun, *Brandis & Broun* on *North Carolina Evidence* § 192, at 3 n.1 (5th ed. 1998); N.C. Gen. Stat. § 8C-1, Rule 801 (1999). Defendant argues that the prosecutor's references to that testimony was hearsay because the prosecutor's questions assumed that Montsinger's testimony was truthful. However, the prosecutor did not refer to Montsinger's testimony to "prove the truth of the matter asserted" therein, N.C. Gen. Stat. § 8C-1, Rule 801(c), but for the proper purpose of challenging defendant's credibility, *see* N.C. Gen. Stat. § 8C-1, Rule 611(b) (1999).

An analogous situation arose in *State v. Freeman*, 319 N.C. 609, 356 S.E.2d 765 (1987), where the defendant was accused of first-degree rape. Part of the evidence against the defendant consisted of pubic and head hair from the defendant and victim that had been found at the scene of the offense. While being cross-examined, the defendant stated his belief that the hair had been planted by the technician who had testified earlier about finding the hair. In response, the prosecutor posed additional cross-examination questions that suggested some skepticism of the defendant's theory. On appeal, the defendant claimed that this cross-examination "improperly assumed the truth of the state's evidence which defendant was called on to explain." *Id.* at 616, 356 S.E.2d at 769. Affirming the defendant's conviction, our Supreme Court held:

> [W]hen a defendant chooses to testify in his own defense he subjects himself to cross-examination "on any matter relevant to any issue in the case, including credibility." N.C.G.S. § 8C-1, Rule 611(b) [(1999)].
>
> . . . .
>
> Cross-examination may be employed to test a witness's credibility in an infinite variety of ways. "The largest possible scope

should be given," and "almost any question" may be put "to test the value of his testimony." 1 Brandis on North Carolina Evidence § 42 (1982). . . .

Defendant here testified in his own behalf and denied his guilt. It was thus appropriate for the state to ask him to explain, if he could, the state's evidence which was inconsistent with this denial. This kind of cross-examination properly went to the credibility of defendant's denial of guilt and his testimony tending to support this denial. The cross-examination . . . did [not] assume the truth of the state's evidence. . . . The cross-examination properly challenged defendant's credibility, which ultimately was a question for the jury.

*Id.* at 616-17, 356 S.E.2d at 769.

In the case at bar, the import of defendant's testimony was that he was riding with Montsinger at the time the victim was attacked. The prosecutor's questions did not assume that Montsinger's testimony was truthful; instead the questions pointed out that defendant's testimony contained factors that were additional to and sometimes inconsistent with Montsinger's. Such probing was appropriate to challenge defendant's credibility. This assignment of error is overruled.

V.

**[5]** Defendant contends it was plain error for the trial court to allow an attorney who had represented him on prior charges to testify at the habitual felon stage of his trial. During the trial of the substantive offenses, the prosecutor cross-examined defendant about his use of other names, and defendant admitted that he had a prior conviction under the name "Clarence Marshall." (Defendant stated that he did not use the name, but conceded that court officials thought that was his name, despite his attempts to tell them otherwise.) Later, during the portion of the trial in which defendant's habitual felon status was established, in order to prove one of defendant's prior felony convictions, the State called the attorney who had represented defendant on that charge to testify that defendant had been convicted under the name "Clarence Marshall." The attorney, after consulting with the North Carolina State Bar, testified that when he represented defendant, he knew him as "Clarence Marshall," "Clarence Walker," or "Clarence Demella." The attorney also identified a document as being the judgment rendered in the earlier felony case and confirmed that defendant in the case at bar was the same individual as the defendant

named in the earlier felony judgment as "Clarence Marshall." Defendant did not object to this testimony.

Despite his grudging admission under cross-examination that he had a prior conviction under the name "Clarence Marshall," defendant contends that his former counsel's testimony about his name usage disclosed confidential information. Although situations arise where knowledge that a former client employed an alias would be confidential, in the case at bar, the conviction and the name used by the person convicted were matters of public record, not matters divulged in confidence. The attorney's testimony only confirmed that defendant was the same individual whom he had previously represented on a felony charge and whom had been convicted of that felony. A clerk of court who was present at the prior conviction and who recalled defendant would have been equally capable of establishing a foundation to admit the judgment from the earlier case. Similarly, the prosecutor could have shown the attorney the judgment from the earlier conviction and asked if he had been involved in that case. Upon receiving an affirmative response, the prosecutor could have asked if the defendant in that case was then present in the courtroom. The attorney could again have answered in the affirmative and identified defendant without ever speaking the name used by defendant for that earlier conviction. Such a process unquestionably does not reveal any confidential information provided to the attorney during the attorney-client relationship. Defendant does not challenge, and we do not address, the propriety of testimony as to names other than "Clarence Marshall." This assignment of error is overruled.

## VI.

[6] Defendant argues he was subjected to double jeopardy by being convicted of attempted first-degree rape and assault with a deadly weapon inflicting serious injury. However, in light of our holding in part I above, this issue is moot. *See Nicholson*, 99 N.C. App. 143, 392 S.E.2d 748. This assignment of error is overruled.

## VII.

[7] Finally, defendant contends that he did not receive effective assistance of counsel at trial. To establish ineffective assistance of counsel, a defendant must satisfy a two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674 (1984). *See State v. Braswell*, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985).

STATE v. WALKER

[139 N.C. App. 512 (2000)]

Under this two-prong test, the defendant must first show that counsel's performance fell below an objective standard of reasonableness as defined by professional norms. This means that defendant must show that his attorney made " 'errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " Second, once defendant satisfies the first prong, he must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error.

*State v. Lee*, 348 N.C. 474, 491, 501 S.E.2d 334, 345 (1998) (internal citations omitted). It is permissible to proceed directly to the second prong of the test. "[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *Braswell*, 312 N.C. at 563, 324 S.E.2d at 249.

The record reveals overwhelming evidence that defendant perpetrated the attack. The victim observed defendant at close range, gave the investigating officers consistent and accurate descriptions of her assailant, and identified him shortly after the attack. Defendant was wearing the same distinctive sweatshirt when he was apprehended that the victim observed during the assault. Defendant gave a number of contradictory statements, which, where credible, were somewhat incriminating. Without deciding whether defense counsel was ineffective, we hold that defendant cannot show there was a reasonable probability that, even in the absence of the alleged deficiencies of trial counsel, a different result could have been obtained at trial. This assignment of error is overruled.

Defendant's conviction of attempted first-degree rape is vacated. We find no error in defendant's conviction of assault with a deadly weapon. This case is remanded to the trial court for reentry of judgment in accordance with this opinion.

Vacated and remanded in part, no error in part.

Judges GREENE and McGEE concur.