ARROWOOD, Judge.
*34 Robert Daryl Bauguss ("defendant") appeals from judgments entered on his convictions of failing to register a sex offender online identifier, first-degree sexual exploitation of a minor, two counts of attempted statutory sex offense of a child, and five counts of statutory sexual offense of a child. For the reasons stated herein, we find no error.
I. Background
On 6 September 2016, a Wilkes County Grand Jury indicted defendant for failure to register a sex offender online identifier and first-degree sexual exploitation of a minor. On 15 May 2017, the grand jury issued additional indictments for seven counts of statutory sexual offense of a child.
The matter came on for trial on 19 February 2018 in Wilkes County Superior Court, the Honorable Michael D. Duncan presiding. The State's evidence tended to show as follows.
*35 On 29 July 2013, Wilkes County Sheriff's Deputy Nancy Graybeal received a report of Facebook conversations between defendant *130 and A.M.[1] that indicated possible child sex abuse. Defendant was a registered sex offender at the time, based on a previous conviction for taking indecent liberties with a child. As a registered sex offender, defendant was prohibited from using social media websites and was required to report any online identifiers, including screen names, to the sheriff of his county of residence. However, defendant did not register the screen name he used to carry out these Facebook conversations with A.M., "Rod Love[.]"
Defendant was arrested at A.M.'s house on 29 July 2013. Detective Graybeal interviewed A.M. on the front porch. A.M. admitted to communicating with defendant on Facebook and sharing photos of her daughter with him. She also admitted to recording a video of her daughter, "Dee," who was six years old at the time of defendant's arrest.
A.M. went to the police station, where she underwent another interview, and allowed officers to look through her cell phone. Nude photos of Dee were stored on the phone, as well as two videos depicting A.M. performing sexual acts on her daughter. A.M. admitted to having performed oral sex on Dee three times and to having touched Dee's vagina four times. She also admitted to sending the photos and at least one video to defendant, some at his request. She explained that she sent these photos and videos, and worked to facilitate sexual interactions between defendant and her daughter to "bait" defendant into a relationship with her.
Defendant was also interviewed at the police station. He admitted to using the screen name "Rod Love" on Facebook in 2013, and also admitted to receiving and requesting nude images and videos of Dee from A.M. Defendant stated that he believed A.M. agreed to sexually abuse her daughter and facilitate sexual interactions with defendant because A.M. was "in love" with him, and thought the pictures and videos of Dee would induce a relationship between them.
The State introduced records of Facebook conversations between defendant and A.M. at trial, which tend to show A.M. and defendant had an ongoing agreement and plan for A.M. to teach Dee to be sexually active so that defendant could perform sexual acts with her. The State also introduced the images and videos of Dee that were extracted from defendant's phone.
*36 Defendant made a general motion to dismiss all charges at the close of the State's evidence. The trial court denied the motion. Defendant presented no evidence, and made a motion for a directed verdict. The trial court considered this motion as a renewed motion to dismiss, which the trial court denied.
The jury was instructed on attempted sexual offense with a child, sexual offense with a child under a theory of aiding and abetting, failing to comply with the sex offender registration law, and first-degree, second-degree, and third-degree sexual exploitation of a minor. The jury returned verdicts of guilty for all charges.
The trial court sentenced defendant to consecutive terms of 317 to 441 months of imprisonment for each of the five statutory sexual offense charges. Defendant was also sentenced to 207 to 309 months of imprisonment for one count of attempted statutory sexual offense to be served consecutively. The remaining offenses were consolidated into a consecutive sentence of 207 to 309 months imprisonment.
Defendant appeals.
II. Discussion
Defendant argues the trial court erred by denying his motion to dismiss the two attempted sexual offense charges and by denying his motion to dismiss the five statutory sexual offense charges.
Our "Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
*131 State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (citation and internal quotation marks omitted), cert. denied , 531 U.S. 890, 121 S.Ct. 213, 148 L.Ed.2d 150 (2000). Substantial evidence exists if there "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted).
"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied , 515 U.S. 1135, 115 S.Ct. 2565, 132 L.Ed.2d 818 (1995).
*37 A. Attempted Sexual Offenses
"A person is guilty of sexual offense with a child if the person is at least 18 years of age and engages in a sexual act with a victim who is a child under the age of 13 years." N.C. Gen. Stat. § 14-27.4A(a) (2013).[2] " 'Sexual act' means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body. ..." N.C. Gen. Stat. § 14-27.1(4) (2013).[3]
To establish the elements of attempted statutory sexual offense, the State must offer substantial evidence of: "(1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense." State v. Sines , 158 N.C. App. 79, 85, 579 S.E.2d 895, 899 (citation and internal quotation marks omitted), cert. denied , 357 N.C. 468, 587 S.E.2d 69 (2003). The intent required for attempted statutory sexual offense is the intent to engage in a sexual act. Id. at 86, 579 S.E.2d at 900.
Defendant was convicted on two counts of attempted sexual offense: (1) 17 CRS 213, described on the verdict sheet as "Attempted Statutory Sex Offense of a Child by an Adult in the truck/car[,]" and (2) 17 CRS 214, described on the verdict sheet as "Attempted Statutory Sex Offense of a Child by an Adult in [A.M.'s House.]" Defendant argues the evidence at trial was insufficient to provide substantial evidence of either attempted statutory sexual offense because insufficient evidence was presented of: (1) his intent to engage in a sexual act with Dee, or (2) of an overt act in furtherance of that intention. We disagree.
1. In Defendant's Truck/Car
First, we address the 17 CRS 213, attempted statutory sexual offense of a child "in the truck/car[.]" At trial, A.M. testified about a time that defendant drove her and Dee to pick up medication for her husband. Dee sat between defendant and A.M. Defendant "tried to put his hands" up Dee's skirt "between her legs." Dee pushed defendant's hand away and crawled closer to her mother. A.M. stated she was not going to make Dee "do anything." After Dee's rebuff, defendant appeared "aggravated."
Defendant argues that his attempt to put his hands between Dee's legs "does not provide any rational basis" to infer defendant intended *38 to perform a sexual act. Defendant asserts that because he was driving a vehicle, "an inference of cunnilingus would make no sense at all" and "no evidence exists to support an inference" defendant intended any type of penetrative contact, especially considering the fact Dee was wearing underwear. We disagree.
"[T]he intent required for attempted statutory sexual offense is the intent to engage in a sexual act." Sines , 158 N.C. App. at 86, 579 S.E.2d at 900. "Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence, it must ordinarily be proven by circumstantial evidence, i.e. , by facts and circumstances from which it may be inferred."
*132 State v. Robinson , 310 N.C. 530, 535, 313 S.E.2d 571, 575 (1984) (quoting State v. Gammons , 260 N.C. 753, 756, 133 S.E.2d 649, 651 (1963) ).
The specific date defendant attempted to put his hand up Dee's skirt is unknown, but Facebook messages tend to show it occurred on or prior to 19 July 2013. Messages between A.M. and defendant on that date indicate defendant was upset. A.M. told defendant that Dee loved him "to death. She just [was not] used to the other stuff[.]"
Of the images extracted from defendant's cell phone, two videos and one or two images were taken prior to 19 July 2013. A video of Dee dancing while clothed was taken on 7 July 2013. A video of Dee nude in the bathtub, washing her hair, was created on 15 July 2013. A clothed image of Dee on her front porch was taken on 16 July 2013. A nude photo of Dee in the bathtub was also recovered, but investigators were unable to determine when it was made. Defendant admitted during his interview with police that he had become aroused by this photo.
Conversations of a sexual nature involving Dee occurred between defendant and A.M. on 9 July 2013. A.M. told defendant she would "suck" him, and defendant stated she should "run that by [Dee]" to make sure A.M. could hold his hand, though A.M. indicated Dee would not be involved in that activity. Messages of a sexual nature were also sent on 15 July 2013, including defendant's inquiries about sexual acts between A.M. and Dee, and a request for explicit pictures of Dee. A.M. asked defendant to come over and play cards at her house on 15 July 2013, and he stated he needed "to get some money 1st" so A.M. would not be "mad" that he wanted to see Dee.
In the conversation on 19 July 2013, A.M. asked defendant if he loved "all the ones [he] played around with" or if he had "feelings for one more then [sic ] the others." He replied, "its just something about [Dee], idk [I don't know][.]" At trial, A.M. testified defendant had expressed *39 his desire to "try something" sexual with Dee. In his interview with law enforcement, defendant stated he would not have engaged in intercourse with Dee, but would have "play[ed]" with her vagina by licking and rubbing it.
This evidence, viewed in the light most favorable to the State, supports a reasonable inference defendant attempted to engage in a sexual act with Dee, as defined in the statute, when he placed his hand between her legs and tried to put his hand up her skirt. The evidence also supports a conclusion that defendant's act of trying to reach up her skirt is an overt act that exceeded mere preparation. We find no error in the trial court's denial of defendant's motion to dismiss this charge for insufficiency of the evidence.
2. Inside A.M.'s House
The other incident of attempted sexual offense occurred on 27 July 2013, when defendant instructed A.M. to have Dee wear a dress without wearing underwear because he was coming over to visit. Defendant argues the evidence was insufficient to provide substantial evidence of attempted statutory sexual offense because insufficient evidence was presented of (1) his intent to engage in a sexual act with Dee, or (2) of an overt act in furtherance of that intention. We disagree. Taking the evidence in the light most favorable to the State, the evidence tends to show defendant had the intent to engage in a sexual act against Dee, and committed an overt act that would have aided the commission of a statutory sexual offense against the victim.
First, there was sufficient evidence of defendant's intent to engage in a sex offense against Dee. The State's evidence tends to show A.M. and defendant had an ongoing agreement and plan for A.M. to teach Dee to be sexually active so that defendant could perform sexual acts with her. A.M. explained to law enforcement that she participated in this scheme because she wanted to use defendant's sexual attraction for Dee to "bait" him into a relationship with her. Defendant admitted to this scheme, and his awareness of A.M.'s intent to induce him into a relationship in an interview with law enforcement.
Facebook messages from 30 May 2013 to 28 July 2013 were admitted into evidence to support A.M.'s testimony, and also as evidence of defendant's interest in committing a sexual offense against Dee. The messages show A.M. sent defendant numerous photos *133 and at least one video of Dee, including a video that showed A.M. performing cunnilingus on Dee in her bedroom on 26 July 2013. The following exchange then took place, on 27 July 2013, after defendant viewed the video:
*40 [Defendant]: I want to do that sooooooooooooooo bad
[Defendant]: get a vid of her playing with it
[A.M.]: U got everything apparently lol
[Defendant]: yes
....
[Defendant]: I want it soooooooooooooooooooooo bad
[A.M.]: I'm trying to figure how to get her to
[Defendant]: fig it out soon plz
....
[A.M.]: I think if she watched a time or two she would join in
[Defendant]: k
....
[Defendant]: I WANT HER [P****]
....
[Defendant]: will she put a dress on with out panies [sic ]
[A.M.]: Sometimes
[Defendant]: get her to do that today
[A.M.]: I will try. Why
[Defendant]: im [coming] up today
[A.M.]: Yay!!!!!!
[A.M.]: I will do my best but I don't know if she will with someone here
....
[A.M.]: What time u coming
[Defendant]: idk yet
[A.M.]: I know ur coming after everything we talked about. ...
*41 Based on the context in which defendant instructed A.M. to have Dee wear a dress without wearing underwear-because he was going to A.M.'s house to commit a sex offense against Dee-we hold there is substantial evidence of defendant's intent to commit a sex offense against Dee. This intent is further evidenced by defendant's previous attempt to put his hand between Dee's legs when she wore a skirt, and also by defendant's admission that he would have committed a sexual act against Dee if given the opportunity.
In light of this intent, we turn to defendant's assertion that there was insufficient evidence of an overt act in furtherance of that intention.
Attempt requires an overt act which must be
adapted to, approximating, and which in the ordinary and likely course of things would result in the commission thereof. Therefore, the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other words, while it need not be the last proximate act to the consummation of the offense attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offense after the preparations are made.
State v. Price , 280 N.C. 154, 158, 184 S.E.2d 866, 869 (1971) (citation omitted). In State v. Miller , 344 N.C. 658, 477 S.E.2d 915 (1996), our Supreme Court applied the law as summarized by Price and held that the defendant's "sneak approach to the victim with the pistol drawn and the first attempt to shoot were each more than enough to constitute an overt act toward armed robbery[.]" Id. at 668-69, 477 S.E.2d at 922. Further, the court held the crime of attempted armed robbery could not be abandoned, even though the defendant did not take the money, "[o]nce defendant placed his hand on the pistol to withdraw it with the intent of shooting and robbing [the victim][.]" Id. at 670, 477 S.E.2d at 922.
Here, defendant clearly intended to commit a sexual offense against Dee, and took overt actions towards that end. A.M. admitted that she and defendant planned to train Dee for sexual acts with defendant, and defendant's Facebook messages to A.M. and his interview with law enforcement demonstrate that he agreed to, encouraged, and participated in this plan. In light of this context, defendant's instruction to dress Dee without *134 panties was more than "mere words" because it was a step in defendant's scheme to "groom" Dee for sexual activity. *42 Although defendant did not make it to A.M.'s house the day that he gave the instruction, he sent Facebook messages assuring A.M. he would arrive the next day "around 5 or 6" and again agreeing to commit a sexual offense against Dee. When defendant arrived at A.M.'s house in accordance with the plan, he was met by law enforcement and arrested.
The Facebook messages and A.M.'s testimony show that, at the time defendant traveled to A.M. and Dee's home and was arrested, Dee had been sexually assaulted by her mother multiple times to groom her for sexual activity with defendant, and defendant had also tried to put his hand between her legs as a part of this process. Dee had also been the victim of numerous explicit photographs and videos as a part of the scheme to "groom" her. From this evidence, a jury could reasonably conclude defendant traveled to A.M.'s house to commit a sexual act in support of his stated intent, and had taken multiple steps to groom the victim, facilitating his ability to carry out the crime.
Our Court's holding in State v. Key , 180 N.C. App. 286, 636 S.E.2d 816 (2006), disc. rev. denied , 361 N.C. 433, 649 S.E.2d 399 (2007) supports this result. In Key , our Court held there was substantial evidence of an overt act towards the crime of second-degree burglary where there was clear intent to commit the crime and the evidence tended to show the defendant went to the victim's home and "stood up on the door sill-and not merely on the porch-for thirty to sixty seconds." Id. at 293, 636 S.E.2d at 822. By going to the home and standing on the door sill, defendant took an overt step towards accomplishing his intent. Id. Similarly, here, defendant's act of traveling to A.M.'s home constitutes substantial evidence of an overt act towards accomplishing his clear intent to commit a sex offense against Dee. Thus, we disagree with the dissent's conclusion that the evidence only tends to show defendant took preparatory steps that are insufficient to establish an overt act.
The dissent cites State v. Walker , 139 N.C. App. 512, 518, 533 S.E.2d 858, 861 (2000) to support its argument that there was insufficient evidence of an overt act. However, Walker is inapposite to the facts before us. In Walker , the defendant attacked a victim he had never met in a bathroom, throwing her to the ground. Id. at 514, 533 S.E.2d at 859. The defendant laid on top of her, tried to cover her mouth, and struck her. Id. He said "shut up bitch" and told her to roll onto her stomach. Id. He also touched her side. Id. at 515, 533 S.E.2d at 859. She began to scream, and the defendant eventually ran away. Id. The Court held that from this evidence there was insufficient evidence that defendant manifested "a sexual motivation for his attack." Id. at 518, 533 S.E.2d at 861 (emphasis added). Thus, the issue in that case was decided based on the *43 defendant's intent, which an overt act did not demonstrate, and is not controlling here, where defendant's intent to commit a sexual offense was clear.
Here, as in Key , defendant took extensive preparatory steps that demonstrate his intent to commit a sexual offense. Then, by instructing A.M. to have Dee wear a dress without wearing underwear because he was coming over to visit, and going to A.M.'s house in accordance with the plan decided over Facebook messages, he performed an overt act towards accomplishing this end. Therefore, the trial court did not err by denying defendant's motion to dismiss this attempt offense.
B. Statutory Sexual Offenses
Defendant was found guilty of five counts of statutory sexual offense of a child by an adult, identified as "inside the bathtub[,]" "outside the bathtub[,]" "performing oral sex in the bedroom[,]" "digital penetration in the bedroom[,]" and "digital penetration in the living room" for aiding and abetting the sexual offenses A.M. committed against Dee. Defendant argues the trial court erred in denying his motion to dismiss these charges because the evidence did not show he encouraged or instructed A.M. to perform cunnilingus or digitally penetrate Dee, or that any statement caused her to perform sexual acts on Dee. We disagree.
*135 Defendant appears to assert his Facebook conversations with A.M. were "fantasies," but argues that even if they were taken at face-value, they were "devoid of any instruction or encouragement" to A.M. to specifically perform sexual acts, i.e. cunnilingus or penetration of Dee's vagina. However, defendant is mistaken that such explicit instruction is required.
In order to find a defendant guilty of a crime under the theory of aiding and abetting, the State must produce evidence tending to show:
(1) that the crime was committed by another; (2) that the defendant knowingly advised, instigated, encouraged, procured, or aided the other person; and (3) that the defendant's actions or statements caused or contributed to the commission of the crime by the other person.
State v. Dick , 370 N.C. 305, 311, 807 S.E.2d 545, 549 (2017) (quoting State v. Francis , 341 N.C. 156, 459 S.E.2d 269 (1995) ).
The defendant need not be present at the scene of the crime, id. at 310, 807 S.E.2d at 548-49, nor "expressly vocalize [his] assent to the criminal conduct."
*44 State v. Marion , 233 N.C. App. 195, 204, 756 S.E.2d 61, 68, disc. rev. denied , 367 N.C. 520, 762 S.E.2d 444 (2014) (citation omitted). "Communication of intent to the perpetrator may be inferred from the defendant's actions and from his relation to the perpetrator." State v. Allen , 127 N.C. App. 182, 185, 488 S.E.2d 294, 296 (1997) (citation omitted).
The record is replete with evidence of the relationship between defendant and A.M. A.M. repeatedly stated she considered defendant to be her friend. Defendant knew A.M. wanted a more significant relationship with him, and believed she was using Dee as bait to try to initiate a sexual relationship between them. Numerous messages between defendant and A.M. support a reasonable inference of a plan between them to engage in sexual acts with Dee.
At trial, A.M. stated she had described the sexual acts she had performed on Dee to defendant because he had told her he liked to hear about them. Defendant argues this description of sexual acts after the fact are insufficient to support a finding defendant knew of or about these acts prior to their occurrence, a requirement for aiding and abetting. However, the record supports an inference that defendant encouraged A.M. to perform such acts on Dee.
As early as 15 July 2013, defendant had received nude photos of Dee and a promise by A.M. to send more nude photos of Dee. Defendant specified he wanted the photos to be as "close as u can and as wide open as u can[.]" Defendant also initiated the idea of sexual "play" between A.M. and Dee. He told A.M. he believed Dee "want[ed] to." That day, A.M. made a video of Dee while she was nude in the bathtub.
Ten days later on 25 July 2013, messages indicate A.M. "had fun" the previous day, but on that day "she[,]" which was likely Dee, was "being stubbern [sic ]" and "only wants to in the bath." On 26 July 2013, defendant asked A.M. if she had "been lickin." A.M. replied no, but she had "rubbed a little yesterday evening." Later that day, A.M. made a video of her performing cunnilingus on Dee in her bedroom, and sent it to defendant. Defendant replied later he wanted "to do that sooooooooooooooo bad." He then requested a video of Dee "playing with it[.]" A.M. made a video on 29 July 2013 of her rubbing Dee's vagina while Dee was on the couch.
Defendant cites to statements made by A.M. in her initial recorded interview, which was not included in the record on appeal. He argues these statements support his assertion that A.M. initiated the sexual abuse of her daughter and acted on her own, and that defendant had no prior knowledge of the sexual acts. However, at trial, A.M. admitted to *45 lying to the police during her initial interview in order to keep defendant from getting in trouble. The jury heard A.M.'s pretrial interview, along with all other evidence. It was their duty to weigh and resolve any conflicting evidence. See State v. Griffin , 18 N.C. App. 14, 16, 195 S.E.2d 569, 570 (1973) ("It is the duty of the jury to weigh and analyze the evidence and to determine whether that evidence shows guilt beyond a reasonable doubt.") (citation and internal quotation marks omitted). *136 Giving the State the benefit of all reasonable inferences, substantial evidence was presented to support a conclusion defendant aided and abetted in A.M.'s five sexual offenses against Dee. We find no error in the trial court's denial of defendant's motion to dismiss the five charges of sexual offense.
III. Conclusion
For the forgoing reasons, the trial court did not err.
NO ERROR.
Judge STROUD concurs.
Judge TYSON concurs in part and respectfully dissents in part by separate opinion.

Pseudonyms and initials are used throughout this opinion to protect the identity of the juvenile.

This statute is recodified as N.C. Gen. Stat. § 14-27.28 by S.L. 2015-181, § 10(a), effective 1 December 2015.

This statute is recodified as N.C. Gen. Stat. § 14-27.20 by S.L. 2015-181, § 2, effective 1 December 2015.