IN THE SUPREME COURT OF NORTH CAROLINA

No. 386PA16

Filed 8 December 2017

STATE OF NORTH CAROLINA

v.

QUENTON LEE DICK

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, 791 S.E.2d 873 (2016), vacating defendant's conviction after appeal from a judgment entered on 18 June 2015 by Judge Susan E. Bray in Superior Court, Guilford County. Heard in the Supreme Court on 10 October 2017.

*Joshua H. Stein, Attorney General, by James M. Stanley, Jr., Special Deputy Attorney General, for the State-appellant.*

*Mark Montgomery for defendant-appellee.*

MORGAN, Justice.

## I.   Background and Procedural History

In this appeal we consider whether a jury was properly instructed on the theory that Quenton Lee Dick (defendant) committed a first-degree sexual offense by being aided and abetted by another individual in the commission of the sexual act. The Court of Appeals concluded that there was not sufficient evidence to submit the

instruction to the jury. We hold that, based upon our enunciated test used to establish the principle of aiding and abetting, the evidence was sufficient to allow the jury to be instructed on the theory of aiding and abetting.

The State presented evidence at trial tending to show that at around 2:00 a.m. on 4 December 2013, E.M.[1] was studying in her apartment for an examination and conversing with three of her friends, all of whom were college students. Those in the apartment included E.M.'s roommate. They were all getting ready for bed when there was a knock at the door, and E.M.'s roommate answered it because she was expecting a guest. The person at the door asked for someone who did not live in the apartment.

A short time later, there was another knock on the door and when the door was opened, a man wearing a bandanna on his face walked into the kitchen of the apartment, looked around, and walked back out. E.M. and her friends were under the impression that someone was playing a trick on them. E.M.'s roommate tried to push the door to close it, but four men prevented her from doing so by charging into the apartment. All of the men were wearing bandannas across their faces and hoods on their heads. At least two of the men had handguns. Three of the men headed to the back of the apartment and started to ransack it. The last man stayed in the living room with E.M. and the other students. E.M. and her friends were ordered to go into

---

[1] We use initials to protect the victim's privacy.

their rooms and bring back everything they had. The men took several items, including cell phones, laptop computers, and a television.

Next, the four college students were ordered to sit back down on the couch in the living room. The intruders duct taped the students' hands behind their backs. The man in the living room ordered E.M. to get up from the couch and walk into one of the bedrooms in the back of the apartment. Three of the men were walking in the bedroom. E.M. attempted to step into the bathroom that was connected to the bedroom, but one of the men grabbed her and told her to go into the bedroom. E.M. started crying and begged the men not to rape her. One of the men replied, "Shut up, bitch. We're not going to rape you." In response, E.M. "kept crying and saying stuff." One of the men responded, "Well, I see we're going to have to . . . tape her mouth because she won't shut up." He then taped shut E.M.'s mouth. Another of the men left the room at that time in order to tape shut the other students' mouths.

E.M. had been left in the bedroom with two of the intruders, one of whom was defendant. The two men took off E.M.'s pants, lifted her shirt and began touching her inappropriately. A third man stepped into the room and said something indicating "that maybe they ha[d] to go or they need[ed] to hurry up or something." All of the men then departed, leaving E.M. in the bedroom alone; however, defendant quickly returned to the room, ripped off the tape from E.M.'s mouth, and forced her to perform oral sex on him. E.M. could see a gun in defendant's pocket while

performing the sexual act. During this time, E.M.'s shirt had been lifted and she was not wearing any underwear. E.M.'s hands were still duct taped behind her back. The sexual act lasted about thirty seconds. Defendant ejaculated on E.M.'s face and shirt. Subsequently, he ran out of the apartment.

E.M. and her friends went to her neighbor's apartment and called the police. Law enforcement officers arrived and questioned the victims. They then took E.M. to a local hospital, where she completed a rape kit. Defendant's DNA profile was later determined to match the semen on E.M.'s shirt.

On 3 February 2014, defendant was indicted on four counts of first-degree kidnapping, one count of first-degree burglary and four counts of robbery with a dangerous weapon. Defendant was also charged with conspiracy to commit robbery with a firearm, but that charge was subsequently dismissed by the State. On 2 June 2014, defendant was indicted on one count of first-degree sexual offense. After all of the evidence was presented at trial, defendant moved to dismiss all charges for insufficiency of the evidence. These motions were denied. A jury returned unanimous verdicts of guilty on all the charges. The four robbery with a firearm convictions and the four kidnapping convictions were consolidated for judgment, with defendant being sentenced to four consecutive terms of 83 to 112 months each followed by a term of 276 to 392 months on the sexual offense charge and another consecutive term of 73

to 100 months on the first-degree burglary conviction. Defendant gave written notice of appeal.

At the Court of Appeals, defendant argued that the trial court erred by improperly instructing the jury on the first-degree sexual offense charge. The jury was given a disjunctive instruction at trial, allowing it to find defendant guilty of first-degree sexual offense if defendant "employed a dangerous and deadly weapon or was aided and abetted by another person or persons" when he committed the sexual act. In considering this issue and ultimately finding error by the trial court, the Court of Appeals reasoned that when a jury is given instructions at trial indicating that a defendant can be found guilty of a crime under two separate theories, there must be sufficient evidence to find such a defendant guilty under both theories. *State v. Dick*, ___ N.C. App. ___, 791 S.E.2d 873, 2016 WL 5746395 (2016) (unpublished). The Court of Appeals noted in the instant case that defendant did not dispute that there was sufficient evidence to properly allow the jury to consider whether he had employed a dangerous or deadly weapon in the commission of the sexual offense, *Dick*, 2016 WL 5746395, at *3; on the other hand, however, the Court of Appeals held that there was not sufficient evidence presented that defendant was aided or abetted by another individual during the act giving rise to defendant's first-degree sexual offense conviction, *id.* at *4.[2] This latter determination by the Court of Appeals regarding

---

[2] The Court of Appeals went on to conclude that there was error which prejudiced defendant based on our precedent in *State v. Pakulski*, 319 N.C. 562, 356 S.E.2d 319 (1987);

the lack of sufficient evidence of defendant's guilt on the theory of aiding and abetting, which was a part of the disjunctive jury instruction, is erroneous and must be reversed.

## II.    Standard of Review

Defendant contends that the trial court erred in submitting the disjunctive instruction to the jury because the evidence was insufficient for the jury to determine that defendant was aided or abetted when he committed the sexual act. "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Scott,* 356 N.C. at 597, 573 S.E.2d at 869. We have held that there must be sufficient evidence to find a defendant guilty under either theory of criminal culpability for the disjunctive instruction to be properly given to the jury. *State v. Lynch*, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990) (holding that insufficient evidence regarding one theory submitted to the jury, when prejudicial, was reversible error requiring new trial). In our view, in the case sub judice the evidence was sufficient to instruct the jury to consider both whether defendant employed a dangerous or deadly weapon in the commission of the sexual offense, as well as whether defendant was aided or abetted by another individual during the act giving rise to defendant's first-degree sexual offense conviction.    There was

however, we do not reach this issue for analysis because it is our determination that there was sufficient evidence presented by the State to allow the jury to find that defendant was aided or abetted by another individual when he committed the sexual offense.

substantial evidence to support each of these two theories of defendant's guilt of this offense, thus legitimizing the disjunctive jury instruction.

## III. Analysis

The trial court did not err in giving the jury the disjunctive instruction at issue because the evidence was sufficient to find defendant guilty of first-degree sexual offense under the theory that he employed a dangerous or deadly weapon in the commission of the sexual act as well as under the theory that he was aided and abetted by one or more persons in the perpetration of the crime.

Defendant was charged with first-degree sexual offense. A first-degree sexual offense is committed when

> the person engages in a sexual act with another person by force and against the will of the other person, and does any of the following:
> 1) Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon.
> 2) Inflicts serious personal injury upon the victim or another person.
> 3) The person commits the offense aided and abetted by one or more other persons.

N.C.G.S. § 14-27.26 (2015). In *State v. Bell* we reasoned that:

> Two lines of cases have developed regarding the use of disjunctive jury instructions. *State v. Diaz* [,317 N.C. 545, 346 S.E.2d 488 (1986), and its progeny] stand[ ] for the proposition that "a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense,* is fatally ambiguous because it is impossible to

determine whether the jury unanimously found that the defendant committed one particular offense." In such cases, the focus is on the conduct of the defendant.

In contrast, this Court has recognized a second line of cases [stemming from *State v. Hartness,* 326 N.C. 561, 391 S.E.2d 177 (1990),] standing for the proposition that "if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense,* the requirement of unanimity is satisfied." In this type of case, the focus is on the intent or purpose of the defendant instead of his conduct.

359 N.C. 1, 29-30, 603 S.E.2d 93, 112-13 (2004) (citing and quoting *State v. Lyons,* 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991)), *cert. denied,* 544 U.S. 1052 (2005).

The current case is consistent with the *Hartness* line of cases. Whether defendant employed or displayed a dangerous or deadly weapon during the commission of the offense, or whether he was aided and abetted by at least one other individual, are different acts that will establish an element of first-degree sexual offense. The properness of the disjunctive jury instruction involved in the present case depends on whether there is sufficient evidence to instruct the jury on the theory that defendant was aided and abetted when he committed the sexual act. The Court of Appeals opined that a person is guilty of aiding or abetting another when he is

actually or constructively present at the scene of the crime and . . . aids, advises, counsels, instigates or encourages another to commit the offense. Even though not actually present during the commission of the crime, a person may be an aider or abettor if he shares the criminal intent of the perpetrator and if, during the commission of the crime, he is in a position to render any necessary aid to the perpetrator.

*Dick*, 2016 2016 WL 5746395, at \*3 (alteration in original) (quoting *State v. Barnette*, 304 N.C. 447, 458, 284 S.E.2d 298, 305 (1981) (citations omitted)).

In stating this test, the Court of Appeals cited this Court's decision in *Barnette*. That case applied the then-existing case law regarding aiding and abetting a crime. However, in *State v. Bond*, we recognized that

> [a]lthough several of our cases decided before 1981 state that actual or constructive presence is required to prove a crime under an aiding and abetting theory, this is no longer required. Our legislature abolished all distinctions between accessories before the fact and principals in the commission of felonies by enacting N.C.G.S. § 14–5.2, effective 1 July 1981. Thus, accessories before the fact, who do not actually commit the crime, and indeed may not have been present, can be convicted of first-degree murder under a theory of aiding and abetting. A showing of defendant's presence or lack thereof is no longer required.

345 N.C. 1, 23-24, 478 S.E.2d 163, 174 (1996), *cert. denied,* 521 U.S. 1124 (1997). Thus, distinctions between individuals actually or constructively present at the scene and those not present at the scene are now irrelevant with respect to aiding and abetting. The abolition of this distinction is further demonstrated by our decision in *State v. Francis* in which we upheld jury instructions concerning aiding and abetting advising the jury that it must

> find three things in order to convict the defendant of first-degree murder on [the] theory [of aiding and abetting]: (1) that the crime was committed by another; (2) that the defendant knowingly advised, instigated, encouraged, procured, or aided the other person; and (3) that the defendant's actions or statements caused or contributed to the commission of the crime by the other person.

341 N.C. 156, 459 S.E.2d 269 (1995) (citing *State v. Allen*, 339 N.C. 545, 453 S.E.2d 150 (1995), *abrogated by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396 (1997)). Noticeably missing from this instruction is any reference to the defendant's location when the crime was committed. A year later in *Bond*, we concluded that giving a jury the pattern jury instructions with respect to aiding and abetting and its "accordance with the requirements delineated in *Francis* was sufficient." 345 N.C. at 24, 478 S.E.2d at 175. Consistent with this evolution in the law pursuant to the 1981 legislative enactment, this Court stated in *Gaines*, that "to the extent our cases decided after N.C.G.S. § 14–5.2 became applicable suggest that actual or constructive presence is necessary to prove a crime under an aiding and abetting theory, these cases are no longer authoritative on this issue." 345 N.C. at 676, 483 S.E.2d at 414 (citations omitted), *cert. denied* 522 U.S. 900 (1997). Two years later, we reiterated the aiding and abetting test approved in *Francis* and reemphasized in *Gaines*. *State v. Goode* 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999). Accordingly, we now apply this same three-prong test to the case at bar because it aligns with the legislature's intent to remove any required analysis concerning a person's proximity to the alleged criminal incident.

In the instant case, the elements needed to satisfy the principle of aiding or abetting are met. Although the other individuals left the room before defendant committed the sexual act, there is sufficient evidence for the jury to conclude that the individuals aided and abetted defendant. E.M. testified that "two of [the men], I

think, began to tape us up behind our backs with duct tape." Three of the men worked together to separate E.M. from the rest of the group. One of the men grabbed E.M. and ordered her to come back into the bedroom when she instead tried to go into the adjoining bathroom. In the bedroom defendant and another individual inappropriately groped E.M., removed all of her clothes below her waist, and fondled her body. The majority of these acts were executed by defendant, along with others. The acts of taping shut E.M.'s mouth, taping her hands behind her back, moving her to the bedroom, removing her clothing, and inappropriately touching E.M. equate to encouragement, instigation, and aid which collectively readily meet the standards of the aiding and abetting test that we articulated in *Bond* and its progeny. Thus, there is evidence here tending to show that defendant committed the crime of first-degree sexual offense while other individuals instigated, encouraged and aided him. By joining defendant in unclothing and immobilizing E.M., while performing a series of overt acts that created an atmosphere to subvert the will of E.M., others are deemed to have contributed to the commission of the crime.

Defendant argues that there is insufficient evidence for a jury to find that he was aided or abetted by another during the commission of the sexual act because he was the only individual in the room with the victim when the incident occurred, thereby demonstrating that no one was in a position to render any necessary aid to him. While the trial evidence regarding the precise physical locations of the other men who accompanied defendant is inexact during the time that defendant

committed the sexual act, the evidence nonetheless supports the conclusion that there was sufficient evidence for a jury to find that defendant was aided and abetted by at least one other individual, since under the *Bond* rationale, neither actual nor constructive presence was required to prove a crime under the theory of aiding and abetting based upon legislation that became effective the same year this Court issued our opinion in *Barnette.*

In view of our holding in *Bond* and its succeeding line of cases, the other men aided, instigated or encouraged defendant to commit this offense. We reach this conclusion in light of the evidence adduced at trial, and find it unnecessary to address the other men's physical proximity to defendant or the victim at the time of the offense in order to prove defendant's guilt under the theory of aiding and abetting. Due to the sufficiency of the evidence as to defendant being one who employed or displayed a dangerous or deadly weapon, and that he was aided and abetted by one or more other persons in the commission of the crime of first-degree sexual offense, the trial court gave a proper disjunctive jury instruction.

Therefore, the Court of Appeals erroneously reversed the trial court by vacating defendant's conviction for this offense and remanding the matter for a new trial on this charge. Accordingly, this Court reverses the judgment of the Court of Appeals and instructs that court to reinstate the trial court's judgment and defendant's conviction for first-degree sexual offense.

REVERSED.