IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-795

 Filed: 16 April 2019

Wilkes County, Nos. 13 CRS 52517, 52535; 17 CRS 213-19

STATE OF NORTH CAROLINA

 v.

ROBERT DARYL BAUGUSS

 Appeal by defendant from judgments entered 23 February 2018 by Judge

Michael D. Duncan in Wilkes County Superior Court. Heard in the Court of Appeals

27 February 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Lauren
 M. Clemmons, for the State.

 Mark Hayes for defendant-appellant.

 ARROWOOD, Judge.

 Robert Daryl Bauguss (“defendant”) appeals from judgments entered on his

convictions of failing to register a sex offender online identifier, first-degree sexual

exploitation of a minor, two counts of attempted statutory sex offense of a child, and

five counts of statutory sexual offense of a child. For the reasons stated herein, we

find no error.

 I. Background
 STATE V. BAUGUSS

 Opinion of the Court

 On 6 September 2016, a Wilkes County Grand Jury indicted defendant for

failure to register a sex offender online identifier and first-degree sexual exploitation

of a minor. On 15 May 2017, the grand jury issued additional indictments for seven

counts of statutory sexual offense of a child.

 The matter came on for trial on 19 February 2018 in Wilkes County Superior

Court, the Honorable Michael D. Duncan presiding. The State’s evidence tended to

show as follows.

 On 29 July 2013, Wilkes County Sheriff’s Deputy Nancy Graybeal received a

report of Facebook conversations between defendant and A.M.1 that indicated

possible child sex abuse. Defendant was a registered sex offender at the time, based

on a previous conviction for taking indecent liberties with a child. As a registered sex

offender, defendant was prohibited from using social media websites and was

required to report any online identifiers, including screen names, to the sheriff of his

county of residence. However, defendant did not register the screen name he used to

carry out these Facebook conversations with A.M., “Rod Love[.]”

 Defendant was arrested at A.M.’s house on 29 July 2013. Detective Graybeal

interviewed A.M. on the front porch. A.M. admitted to communicating with

defendant on Facebook and sharing photos of her daughter with him. She also

 1 Pseudonyms and initials are used throughout this opinion to protect the identity of the
juvenile.

 -2-
 STATE V. BAUGUSS

 Opinion of the Court

admitted to recording a video of her daughter, “Dee,” who was six years old at the

time of defendant’s arrest.

 A.M. went to the police station, where she underwent another interview, and

allowed officers to look through her cell phone. Nude photos of Dee were stored on

the phone, as well as two videos depicting A.M. performing sexual acts on her

daughter. A.M. admitted to having performed oral sex on Dee three times and to

having touched Dee’s vagina four times. She also admitted to sending the photos and

at least one video to defendant, some at his request. She explained that she sent

these photos and videos, and worked to facilitate sexual interactions between

defendant and her daughter to “bait” defendant into a relationship with her.

 Defendant was also interviewed at the police station. He admitted to using the

screen name “Rod Love” on Facebook in 2013, and also admitted to receiving and

requesting nude images and videos of Dee from A.M. Defendant stated that he

believed A.M. agreed to sexually abuse her daughter and facilitate sexual interactions

with defendant because A.M. was “in love” with him, and thought the pictures and

videos of Dee would induce a relationship between them.

 The State introduced records of Facebook conversations between defendant

and A.M. at trial, which tend to show A.M. and defendant had an ongoing agreement

and plan for A.M. to teach Dee to be sexually active so that defendant could perform

 -3-
 STATE V. BAUGUSS

 Opinion of the Court

sexual acts with her. The State also introduced the images and videos of Dee that

were extracted from defendant’s phone.

 Defendant made a general motion to dismiss all charges at the close of the

State’s evidence. The trial court denied the motion. Defendant presented no

evidence, and made a motion for a directed verdict. The trial court considered this

motion as a renewed motion to dismiss, which the trial court denied.

 The jury was instructed on attempted sexual offense with a child, sexual

offense with a child under a theory of aiding and abetting, failing to comply with the

sex offender registration law, and first-degree, second-degree, and third-degree

sexual exploitation of a minor. The jury returned verdicts of guilty for all charges.

 The trial court sentenced defendant to consecutive terms of 317 to 441 months

of imprisonment for each of the five statutory sexual offense charges. Defendant was

also sentenced to 207 to 309 months of imprisonment for one count of attempted

statutory sexual offense to be served consecutively. The remaining offenses were

consolidated into a consecutive sentence of 207 to 309 months imprisonment.

 Defendant appeals.

 II. Discussion

 Defendant argues the trial court erred by denying his motion to dismiss the

two attempted sexual offense charges and by denying his motion to dismiss the five

statutory sexual offense charges.

 -4-
 STATE V. BAUGUSS

 Opinion of the Court

 Our “Court reviews the trial court’s denial of a motion to dismiss de novo.”

State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted).

“Upon defendant’s motion for dismissal, the question for the Court is whether there

is substantial evidence (1) of each essential element of the offense charged, or of a

lesser offense included therein, and (2) of defendant’s being the perpetrator of such

offense. If so, the motion is properly denied.” State v. Fritsch, 351 N.C. 373, 378, 526

S.E.2d 451, 455 (citation and internal quotation marks omitted), cert. denied, 531

U.S. 890, 148 L. Ed. 2d 150 (2000). Substantial evidence exists if there “is such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.” State v. Smith, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations

omitted).

 “In making its determination, the trial court must consider all evidence

admitted, whether competent or incompetent, in the light most favorable to the State,

giving the State the benefit of every reasonable inference and resolving any

contradictions in its favor.” State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223

(1994), cert. denied, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

 A. Attempted Sexual Offenses

 “A person is guilty of sexual offense with a child if the person is at least 18

years of age and engages in a sexual act with a victim who is a child under the age of

 -5-
 STATE V. BAUGUSS

 Opinion of the Court

13 years.” N.C. Gen. Stat. § 14-27.4A(a) (2013).2 “ ‘Sexual act’ means cunnilingus,

fellatio, analingus, or anal intercourse, but does not include vaginal intercourse.

Sexual act also means the penetration, however slight, by any object into the genital

or anal opening of another person’s body. . . .” N.C. Gen. Stat. § 14-27.1(4) (2013).3

 To establish the elements of attempted statutory sexual offense, the State must

offer substantial evidence of: “(1) the intent to commit the substantive offense, and

(2) an overt act done for that purpose which goes beyond mere preparation, but (3)

falls short of the completed offense.” State v. Sines, 158 N.C. App. 79, 85, 579 S.E.2d

895, 899 (citation and internal quotation marks omitted), cert. denied, 357 N.C. 468,

587 S.E.2d 69 (2003). The intent required for attempted statutory sexual offense is

the intent to engage in a sexual act. Id. at 86, 579 S.E.2d at 900.

 Defendant was convicted on two counts of attempted sexual offense: (1) 17

CRS 213, described on the verdict sheet as “Attempted Statutory Sex Offense of a

Child by an Adult in the truck/car[,]” and (2) 17 CRS 214, described on the verdict

sheet as “Attempted Statutory Sex Offense of a Child by an Adult in [A.M.’s House.]”

Defendant argues the evidence at trial was insufficient to provide substantial

evidence of either attempted statutory sexual offense because insufficient evidence

 2 This statute is recodified as N.C. Gen. Stat. § 14-27.28 by S.L. 2015-181, § 10(a), effective
1 December 2015.
 3 This statute is recodified as N.C. Gen. Stat. § 14-27.20 by S.L. 2015-181, § 2, effective

1 December 2015.

 -6-
 STATE V. BAUGUSS

 Opinion of the Court

was presented of: (1) his intent to engage in a sexual act with Dee, or (2) of an overt

act in furtherance of that intention. We disagree.

 1. In Defendant’s Truck/Car

 First, we address the 17 CRS 213, attempted statutory sexual offense of a child

“in the truck/car[.]” At trial, A.M. testified about a time that defendant drove her and

Dee to pick up medication for her husband. Dee sat between defendant and A.M.

Defendant “tried to put his hands” up Dee’s skirt “between her legs.” Dee pushed

defendant’s hand away and crawled closer to her mother. A.M. stated she was not

going to make Dee “do anything.” After Dee’s rebuff, defendant appeared

“aggravated.”

 Defendant argues that his attempt to put his hands between Dee’s legs “does

not provide any rational basis” to infer defendant intended to perform a sexual act.

Defendant asserts that because he was driving a vehicle, “an inference of cunnilingus

would make no sense at all” and “no evidence exists to support an inference”

defendant intended any type of penetrative contact, especially considering the fact

Dee was wearing underwear. We disagree.

 “[T]he intent required for attempted statutory sexual offense is the intent to

engage in a sexual act.” Sines, 158 N.C. App. at 86, 579 S.E.2d at 900. “Intent is an

attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct

evidence, it must ordinarily be proven by circumstantial evidence, i.e., by facts and

 -7-
 STATE V. BAUGUSS

 Opinion of the Court

circumstances from which it may be inferred.” State v. Robinson, 310 N.C. 530, 535,

313 S.E.2d 571, 575 (1984) (quoting State v. Gammons, 260 N.C. 753, 756, 133 S.E.

2d 649, 651 (1963)).

 The specific date defendant attempted to put his hand up Dee’s skirt is

unknown, but Facebook messages tend to show it occurred on or prior to 19 July 2013.

Messages between A.M. and defendant on that date indicate defendant was upset.

A.M. told defendant that Dee loved him “to death. She just [was not] used to the

other stuff[.]”

 Of the images extracted from defendant’s cell phone, two videos and one or two

images were taken prior to 19 July 2013. A video of Dee dancing while clothed was

taken on 7 July 2013. A video of Dee nude in the bathtub, washing her hair, was

created on 15 July 2013. A clothed image of Dee on her front porch was taken on

16 July 2013. A nude photo of Dee in the bathtub was also recovered, but

investigators were unable to determine when it was made. Defendant admitted

during his interview with police that he had become aroused by this photo.

 Conversations of a sexual nature involving Dee occurred between defendant

and A.M. on 9 July 2013. A.M. told defendant she would “suck” him, and defendant

stated she should “run that by [Dee]” to make sure A.M. could hold his hand, though

A.M. indicated Dee would not be involved in that activity. Messages of a sexual

nature were also sent on 15 July 2013, including defendant’s inquiries about sexual

 -8-
 STATE V. BAUGUSS

 Opinion of the Court

acts between A.M. and Dee, and a request for explicit pictures of Dee. A.M. asked

defendant to come over and play cards at her house on 15 July 2013, and he stated

he needed “to get some money 1st” so A.M. would not be “mad” that he wanted to see

Dee.

 In the conversation on 19 July 2013, A.M. asked defendant if he loved “all the

ones [he] played around with” or if he had “feelings for one more then [sic] the others.”

He replied, “its just something about [Dee], idk [I don’t know][.]” At trial, A.M.

testified defendant had expressed his desire to “try something” sexual with Dee. In

his interview with law enforcement, defendant stated he would not have engaged in

intercourse with Dee, but would have “play[ed]” with her vagina by licking and

rubbing it.

 This evidence, viewed in the light most favorable to the State, supports a

reasonable inference defendant attempted to engage in a sexual act with Dee, as

defined in the statute, when he placed his hand between her legs and tried to put his

hand up her skirt. The evidence also supports a conclusion that defendant’s act of

trying to reach up her skirt is an overt act that exceeded mere preparation. We find

no error in the trial court’s denial of defendant’s motion to dismiss this charge for

insufficiency of the evidence.

 2. Inside A.M.’s House

 -9-
 STATE V. BAUGUSS

 Opinion of the Court

 The other incident of attempted sexual offense occurred on 27 July 2013, when

defendant instructed A.M. to have Dee wear a dress without wearing underwear

because he was coming over to visit. Defendant argues the evidence was insufficient

to provide substantial evidence of attempted statutory sexual offense because

insufficient evidence was presented of (1) his intent to engage in a sexual act with

Dee, or (2) of an overt act in furtherance of that intention. We disagree. Taking the

evidence in the light most favorable to the State, the evidence tends to show

defendant had the intent to engage in a sexual act against Dee, and committed an

overt act that would have aided the commission of a statutory sexual offense against

the victim.

 First, there was sufficient evidence of defendant’s intent to engage in a sex

offense against Dee. The State’s evidence tends to show A.M. and defendant had an

ongoing agreement and plan for A.M. to teach Dee to be sexually active so that

defendant could perform sexual acts with her. A.M. explained to law enforcement

that she participated in this scheme because she wanted to use defendant’s sexual

attraction for Dee to “bait” him into a relationship with her. Defendant admitted to

this scheme, and his awareness of A.M.’s intent to induce him into a relationship in

an interview with law enforcement.

 Facebook messages from 30 May 2013 to 28 July 2013 were admitted into

evidence to support A.M.’s testimony, and also as evidence of defendant’s interest in

 - 10 -
 STATE V. BAUGUSS

 Opinion of the Court

committing a sexual offense against Dee. The messages show A.M. sent defendant

numerous photos and at least one video of Dee, including a video that showed A.M.

performing cunnilingus on Dee in her bedroom on 26 July 2013. The following

exchange then took place, on 27 July 2013, after defendant viewed the video:

 [Defendant]: I want to do that sooooooooooooooo bad

 [Defendant]: get a vid of her playing with it

 [A.M.]: U got everything apparently lol

 [Defendant]: yes

 ....

 [Defendant]: I want it soooooooooooooooooooooo bad

 [A.M.]: I’m trying to figure how to get her to

 [Defendant]: fig it out soon plz

 ....

 [A.M.]: I think if she watched a time or two she would join
 in

 [Defendant]: k

 ....

 [Defendant]: I WANT HER [P****]

 ....

 [Defendant]: will she put a dress on with out panies [sic]

 [A.M.]: Sometimes

 - 11 -
 STATE V. BAUGUSS

 Opinion of the Court

 [Defendant]: get her to do that today

 [A.M.]: I will try. Why

 [Defendant]: im [coming] up today

 [A.M.]: Yay!!!!!!

 [A.M.]: I will do my best but I don’t know if she will with
 someone here

 ....

 [A.M.]: What time u coming

 [Defendant]: idk yet

 [A.M.]: I know ur coming after everything we talked
 about. . . .

Based on the context in which defendant instructed A.M. to have Dee wear a dress

without wearing underwear—because he was going to A.M.’s house to commit a sex

offense against Dee—we hold there is substantial evidence of defendant’s intent to

commit a sex offense against Dee. This intent is further evidenced by defendant’s

previous attempt to put his hand between Dee’s legs when she wore a skirt, and also

by defendant’s admission that he would have committed a sexual act against Dee if

given the opportunity.

 In light of this intent, we turn to defendant’s assertion that there was

insufficient evidence of an overt act in furtherance of that intention.

 Attempt requires an overt act which must be

 - 12 -
 STATE V. BAUGUSS

 Opinion of the Court

 adapted to, approximating, and which in the ordinary and
 likely course of things would result in the commission
 thereof. Therefore, the act must reach far enough towards
 the accomplishment of the desired result to amount to the
 commencement of the consummation. It must not be
 merely preparatory. In other words, while it need not be
 the last proximate act to the consummation of the offense
 attempted to be perpetrated, it must approach sufficiently
 near to it to stand either as the first or some subsequent
 step in a direct movement towards the commission of the
 offense after the preparations are made.

State v. Price, 280 N.C. 154, 158, 184 S.E.2d 866, 869 (1971) (citation omitted). In

State v. Miller, 344 N.C. 658, 477 S.E.2d 915 (1996), our Supreme Court applied the

law as summarized by Price and held that the defendant’s “sneak approach to the

victim with the pistol drawn and the first attempt to shoot were each more than

enough to constitute an overt act toward armed robbery[.]” Id. at 668-69, 477 S.E.2d

at 922. Further, the court held the crime of attempted armed robbery could not be

abandoned, even though the defendant did not take the money, “[o]nce defendant

placed his hand on the pistol to withdraw it with the intent of shooting and robbing

[the victim][.]” Id. at 670, 477 S.E.2d at 922.

 Here, defendant clearly intended to commit a sexual offense against Dee, and

took overt actions towards that end. A.M. admitted that she and defendant planned

to train Dee for sexual acts with defendant, and defendant’s Facebook messages to

A.M. and his interview with law enforcement demonstrate that he agreed to,

encouraged, and participated in this plan. In light of this context, defendant’s

 - 13 -
 STATE V. BAUGUSS

 Opinion of the Court

instruction to dress Dee without panties was more than “mere words” because it was

a step in defendant’s scheme to “groom” Dee for sexual activity.

 Although defendant did not make it to A.M.’s house the day that he gave the

instruction, he sent Facebook messages assuring A.M. he would arrive the next day

“around 5 or 6” and again agreeing to commit a sexual offense against Dee. When

defendant arrived at A.M.’s house in accordance with the plan, he was met by law

enforcement and arrested.

 The Facebook messages and A.M.’s testimony show that, at the time defendant

traveled to A.M. and Dee’s home and was arrested, Dee had been sexually assaulted

by her mother multiple times to groom her for sexual activity with defendant, and

defendant had also tried to put his hand between her legs as a part of this process.

Dee had also been the victim of numerous explicit photographs and videos as a part

of the scheme to “groom” her. From this evidence, a jury could reasonably conclude

defendant traveled to A.M.’s house to commit a sexual act in support of his stated

intent, and had taken multiple steps to groom the victim, facilitating his ability to

carry out the crime.

 Our Court’s holding in State v. Key, 180 N.C. App. 286, 636 S.E.2d 816 (2006),

disc. rev. denied, 361 N.C. 433, 649 S.E.2d 399 (2007) supports this result. In Key,

our Court held there was substantial evidence of an overt act towards the crime of

second-degree burglary where there was clear intent to commit the crime and the

 - 14 -
 STATE V. BAUGUSS

 Opinion of the Court

evidence tended to show the defendant went to the victim’s home and “stood up on

the door sill—and not merely on the porch—for thirty to sixty seconds.” Id. at 293,

636 S.E.2d at 822. By going to the home and standing on the door sill, defendant took

an overt step towards accomplishing his intent. Id. Similarly, here, defendant’s act

of traveling to A.M.’s home constitutes substantial evidence of an overt act towards

accomplishing his clear intent to commit a sex offense against Dee. Thus, we disagree

with the dissent’s conclusion that the evidence only tends to show defendant took

preparatory steps that are insufficient to establish an overt act.

 The dissent cites State v. Walker, 139 N.C. App. 512, 518, 533 S.E.2d 858, 861

(2000) to support its argument that there was insufficient evidence of an overt act.

However, Walker is inapposite to the facts before us. In Walker, the defendant

attacked a victim he had never met in a bathroom, throwing her to the ground. Id.

at 514, 533 S.E.2d at 859. The defendant laid on top of her, tried to cover her mouth,

and struck her. Id. He said “shut up bitch” and told her to roll onto her stomach. Id.

He also touched her side. Id. at 515, 533 S.E.2d at 859. She began to scream, and

the defendant eventually ran away. Id. The Court held that from this evidence there

was insufficient evidence that defendant manifested “a sexual motivation for his

attack.” Id. at 518, 533 S.E.2d at 861 (emphasis added). Thus, the issue in that case

was decided based on the defendant’s intent, which an overt act did not demonstrate,

 - 15 -
 STATE V. BAUGUSS

 Opinion of the Court

and is not controlling here, where defendant’s intent to commit a sexual offense was

clear.

 Here, as in Key, defendant took extensive preparatory steps that demonstrate

his intent to commit a sexual offense. Then, by instructing A.M. to have Dee wear a

dress without wearing underwear because he was coming over to visit, and going to

A.M.’s house in accordance with the plan decided over Facebook messages, he

performed an overt act towards accomplishing this end. Therefore, the trial court did

not err by denying defendant’s motion to dismiss this attempt offense.

 B. Statutory Sexual Offenses

 Defendant was found guilty of five counts of statutory sexual offense of a child

by an adult, identified as “inside the bathtub[,]” “outside the bathtub[,]” “performing

oral sex in the bedroom[,]” “digital penetration in the bedroom[,]” and “digital

penetration in the living room” for aiding and abetting the sexual offenses A.M.

committed against Dee. Defendant argues the trial court erred in denying his motion

to dismiss these charges because the evidence did not show he encouraged or

instructed A.M. to perform cunnilingus or digitally penetrate Dee, or that any

statement caused her to perform sexual acts on Dee. We disagree.

 Defendant appears to assert his Facebook conversations with A.M. were

“fantasies,” but argues that even if they were taken at face-value, they were “devoid

of any instruction or encouragement” to A.M. to specifically perform sexual acts, i.e.

 - 16 -
 STATE V. BAUGUSS

 Opinion of the Court

cunnilingus or penetration of Dee’s vagina. However, defendant is mistaken that

such explicit instruction is required.

 In order to find a defendant guilty of a crime under the theory of aiding and

abetting, the State must produce evidence tending to show:

 (1) that the crime was committed by another; (2) that the
 defendant knowingly advised, instigated, encouraged,
 procured, or aided the other person; and (3) that the
 defendant’s actions or statements caused or contributed to
 the commission of the crime by the other person.

State v. Dick, 370 N.C. 305, 311, 807 S.E.2d 545, 549 (2017) (quoting State v. Francis,

341 N.C. 156, 459 S.E.2d 269 (1995)).

 The defendant need not be present at the scene of the crime, id. at 310, 807

S.E.2d at 548-49, nor “expressly vocalize [his] assent to the criminal conduct.” State

v. Marion, 233 N.C. App. 195, 204, 756 S.E.2d 61, 68, disc. rev. denied, 376 N.C. 520,

762 S.E.2d 444 (2014) (citation omitted). “Communication of intent to the perpetrator

may be inferred from the defendant’s actions and from his relation to the

perpetrator.” State v. Allen, 127 N.C. App. 182, 185, 488 S.E.2d 294, 296 (1997)

(citation omitted).

 The record is replete with evidence of the relationship between defendant and

A.M. A.M. repeatedly stated she considered defendant to be her friend. Defendant

knew A.M. wanted a more significant relationship with him, and believed she was

using Dee as bait to try to initiate a sexual relationship between them. Numerous

 - 17 -
 STATE V. BAUGUSS

 Opinion of the Court

messages between defendant and A.M. support a reasonable inference of a plan

between them to engage in sexual acts with Dee.

 At trial, A.M. stated she had described the sexual acts she had performed on

Dee to defendant because he had told her he liked to hear about them. Defendant

argues this description of sexual acts after the fact are insufficient to support a

finding defendant knew of or about these acts prior to their occurrence, a requirement

for aiding and abetting. However, the record supports an inference that defendant

encouraged A.M. to perform such acts on Dee.

 As early as 15 July 2013, defendant had received nude photos of Dee and a

promise by A.M. to send more nude photos of Dee. Defendant specified he wanted

the photos to be as “close as u can and as wide open as u can[.]” Defendant also

initiated the idea of sexual “play” between A.M. and Dee. He told A.M. he believed

Dee “want[ed] to.” That day, A.M. made a video of Dee while she was nude in the

bathtub.

 Ten days later on 25 July 2013, messages indicate A.M. “had fun” the previous

day, but on that day “she[,]” which was likely Dee, was “being stubbern [sic]” and

“only wants to in the bath.” On 26 July 2013, defendant asked A.M. if she had “been

lickin.” A.M. replied no, but she had “rubbed a little yesterday evening.” Later that

day, A.M. made a video of her performing cunnilingus on Dee in her bedroom, and

sent it to defendant. Defendant replied later he wanted “to do that sooooooooooooooo

 - 18 -
 STATE V. BAUGUSS

 Opinion of the Court

bad.” He then requested a video of Dee “playing with it[.]” A.M. made a video on

29 July 2013 of her rubbing Dee’s vagina while Dee was on the couch.

 Defendant cites to statements made by A.M. in her initial recorded interview,

which was not included in the record on appeal. He argues these statements support

his assertion that A.M. initiated the sexual abuse of her daughter and acted on her

own, and that defendant had no prior knowledge of the sexual acts. However, at trial,

A.M. admitted to lying to the police during her initial interview in order to keep

defendant from getting in trouble. The jury heard A.M.’s pretrial interview, along

with all other evidence. It was their duty to weigh and resolve any conflicting

evidence. See State v. Griffin, 18 N.C. App. 14, 16, 195 S.E.2d 569, 570 (1973) (“It is

the duty of the jury to weigh and analyze the evidence and to determine whether that

evidence shows guilt beyond a reasonable doubt.”) (citation and internal quotation

marks omitted).

 Giving the State the benefit of all reasonable inferences, substantial evidence

was presented to support a conclusion defendant aided and abetted in A.M.’s five

sexual offenses against Dee. We find no error in the trial court’s denial of defendant’s

motion to dismiss the five charges of sexual offense.

 III. Conclusion

 For the forgoing reasons, the trial court did not err.

 NO ERROR.

 - 19 -
 STATE V. BAUGUSS

 Opinion of the Court

 Judge STROUD concurs.

 Judge TYSON concurs in part and respectfully dissents in part by separate

opinion.

 - 20 -
 No. COA18-795 – State v. Bauguss

 TYSON, Judge, concurring in part and dissenting in part.

 The majority’s opinion finds no error in the trial court’s denial of all of

defendant’s motions to dismiss. I agree defendant has failed to show prejudicial

errors in the trial court’s denial of the motion to dismiss the five charges of sexual

offense or in the denial of defendant’s motion to dismiss the attempted sexual offense,

which occurred inside defendant’s vehicle. I disagree with the majority opinion’s

conclusion to uphold the trial court’s ruling that the State presented substantial

evidence of any overt act by the defendant to support the separate, purported

attempted sexual offense against Dee while inside of A.M.’s house. I concur in part

and respectfully dissent in part.

 A person is guilty of a statutory sexual offense if the perpetrator is at least

eighteen years old and engages in a sexual act with a victim under the age of thirteen.

N.C. Gen. Stat. § 14-27.4A (2013). In the statute, a “sexual act” excludes vaginal

intercourse, but includes “cunnilingus, fellatio, analingus, or anal intercourse” and

“penetration, however slight, by any object into the genital or anal opening of another

person’s body.” State v. Minyard, 231 N.C. App. 605, 616, 753 S.E.2d 176, 185 (2014)

(citation omitted).

 “The elements of an attempt to commit any crime are: (1) the intent to commit

the substantive offense, and (2) an overt act done for that purpose which goes beyond

mere preparation, but (3) falls short of the completed offense.” State v. Miller, 344

N.C. 658, 667, 477 S.E.2d 915, 921 (1996) (citations omitted).
 STATE V. BAUGUSS

 TYSON, J., concurring in part and dissenting in part

 Defendant does not dispute his or Dee’s age, but argues insufficient evidence

was presented of either his purported intent to engage in sexual acts with Dee or of

any purported overt act in furtherance of that intention. Defendant was convicted on

two counts of attempted sexual offense, based upon two specific and unrelated

instances.

 The first incident, which we all agree the State presented substantial evidence

of an attempt, was defendant’s attempt to put his hand up Dee’s skirt while they were

inside his vehicle with her mother on or about 19 July 2013. The second incident of

attempted sexual offense purportedly occurred between 27 July 2013 and 29 July

2013. Defendant had requested of Dee’s mother, A.M., on 27 July 2013 to have Dee

wear a dress without wearing underwear, because he was planning to visit. Though

he did not come over that day or the next day, defendant arrived at A.M.’s house on

29 July 2013, where he was arrested. Contrary to the majority’s opinion, our

precedents support neither defendant’s request of A.M. nor his arrival at her house

to constitute an overt act to meet the elements of the attempted sexual offense.

 An unlawful attempt requires an overt act which must be

 adapted to, approximating, and which in the ordinary and
 likely course of things would result in the commission
 thereof. Therefore, the act must reach far enough towards
 the accomplishment of the desired result to amount to the
 commencement of the consummation. It must not be
 merely preparatory.

 2
 STATE V. BAUGUSS

 TYSON, J., concurring in part and dissenting in part

State v. Price, 280 N.C. 154, 158, 184 S.E.2d 866, 869 (1971) (citation omitted). In

cases involving other offenses, “mere words” or mere preparation have not been

adequate to support a conviction for attempt.

 In State v. Daniel, the jury was instructed that if the defendant had “cursed”

the victim, “and ordered him to come to him, and [the victim] obeyed through fear,

the defendant was guilty of an assault.” 136 N.C. 571, 573, 48 S.E. 544, 544 (1904).

Our Supreme Court held that “[m]ere words, however insulting or abusive, will not

constitute an assault,” but “[w]here an unequivocal purpose of violence is

accompanied by any act which, if not stopped or diverted, will be followed by personal

injury, the execution of the purpose is then begun and there has been a sufficient offer

or attempt.” Id. at 574, 48 S.E. at 545.

 In attempted robbery with a dangerous weapon cases, words accompanied by

the defendant’s drawing out a firearm was held enough to show both intent to commit

robbery and an overt act in furtherance thereof. See, e.g., State v. Davis, 340 N.C. 1,

13, 455 S.E.2d 627, 633 (1995) (“defendants drew their pistols, and [one] told the

victim, ‘Buddy, don't even try it.’ Such actions have been held to be sufficient evidence

of attempted armed robbery even without a demand for money or property”); State v.

Taylor, 362 N.C. 514, 539, 669 S.E.2d 239, 261 (2008) (the defendant approached the

victim “from behind, pointed a gun at him, and indicated he should ‘stay still’ and

 3
 STATE V. BAUGUSS

 TYSON, J., concurring in part and dissenting in part

empty his pockets. These words and actions are evidence of both defendant’s intent

to rob . . . and an ‘overt act calculated to bring about’ that result.” (citation omitted)).

 Drawing a gun on a victim, along with some type of statement is enough “in

the ordinary and likely course of things [to] result in the commission” of robbery. See

Price, 280 N.C. at 158, 184 S.E.2d at 869. Conversely, defendant’s request to Dee’s

mother is more analogous to the “mere words” used in the cases cited above, and is

easily distinguished from defendant’s attempt inside his vehicle, which we all agree

sustains that separate conviction, but which cannot be used to “bootstrap” an overt

act for the other attempt conviction.

 The facts of State v. Miller, 344 N.C. 658, 477 S.E.2d 915 (1996), cited in the

majority’s opinion, are consistent with the aforementioned attempted robbery cases

where words plus the drawing of a gun were enough to constitute an overt act.

However, in this instance, defendant’s message to A.M. requesting her to have Dee

wear a dress without her wearing underwear does not rise to the level of an overt act.

Further, no evidence tends to show if A.M. had dressed Dee as defendant had

requested when he arrived and was arrested at her home two days later. Viewed in

the light most favorable to the State and consistent with precedents, these words are

best described as merely preparatory. See Price, 280 N.C. at 158, 184 S.E.2d at 869.

 The majority’s opinion also asserts defendant’s travel to A.M.’s house on the

day of his arrest was an overt act to support an unlawful attempt to commit a sexual

 4
 STATE V. BAUGUSS

 TYSON, J., concurring in part and dissenting in part

act on Dee that day. Defendant’s going over to A.M.’s house two days after his text

request did not “amount to the commencement of the consummation [of a sexual act].

It [was] merely preparatory.” Price, 280 N.C. at 158, 184 S.E.2d at 869. I respectfully

disagree this action was an overt act to support this conviction.

 After extensive review of the precedents and controlling case law, no attempted

sexual offense case exists where an overt act to support the charge was not identified.

In a case alleging an attempted first-degree rape, this Court found no overt act

occurred to support the conviction for attempt, even though the defendant therein,

attacked a woman inside a public bathroom, demanded that she roll onto her

stomach, and touched her side with his hand. State v. Walker, 139 N.C. App. 512, 518,

533 S.E.2d 858, 861 (2000). Though this Court found the attack was vicious, “there

was insufficient evidence that defendant manifested, by an overt act, a sexual

motivation for his attack on the victim.” Id. Because a conviction for an attempt can

only be sustained through substantial evidence of intent and an overt act, mere words

or defendant’s preparation alone is not an overt act to support this conviction for

attempt. See id.

 Conversely, and consistent with the other attempt conviction before us, which

we affirm, the overt acts identified in attempted sexual offense cases clearly would

have led to the completion of the sexual offense. See, e.g., Minyard, 231 N.C. App. at

618, 753 S.E.2d at 186 (finding an overt act where the defendant placed his penis on

 5
 STATE V. BAUGUSS

 TYSON, J., concurring in part and dissenting in part

the victim’s buttocks); State v. Henderson, 182 N.C. App. 406, 412-13, 642 S.E.2d 509,

513 (2007) (finding an overt act where the defendant removed his pants, walked into

the room where his daughter was, stood in front of her, and requested that she put

his penis in her mouth); State v. Buff, 170 N.C. App. 374, 380, 612 S.E.2d 366, 371

(2005) (finding “several overt acts” occurred where the defendant had touched the

victim’s breast and vaginal area).

 The majority’s opinion points to other instances where Dee had previously been

victimized as a result of the plan between defendant and A.M. to “groom” Dee for

sexual acts. While these other instances may support the other crimes for which

defendant was convicted, they cannot be applied to the particular offense of the

purported attempted sexual act in A.M.’s house on the date of defendant’s arrest two

days after he made his request to her mother for her to dress Dee in a certain manner.

See State v. Shue, 163 N.C. App. 58, 62, 592 S.E.2d 233, 236 (2004) (evidence of taking

indecent liberties with one brother cannot be used to show an attempt to commit

indecent liberties with the other brother, even though the defendant entered the

bathroom stall with the child, fixed the lock, grabbed the child’s arm, and then exited

the stall).

 The majority’s opinion also cites State v. Key to support its assertion that

defendant’s mere presence at A.M.’s house, alone, was an overt act. Key involved

charges of, inter alia, first-degree rape and attempted second-degree burglary. 180

 6
 STATE V. BAUGUSS

 TYSON, J., concurring in part and dissenting in part

N.C. App. 286, 288, 636 S.E.2d 816, 819 (2006). The majority’s opinion cites to the

discussion in the case concerning the attempted burglary. A defendant standing in

the doorway of a home may constitute an overt act for an attempted burglary

conviction, but such an action is inapplicable to, and does not support a conviction

for, an attempted sexual offense or the particular facts of this case.

 The “elements of second-degree burglary are: (1) the breaking (2) and entering

(3) in the nighttime (4) into a dwelling house or sleeping apartment (5) of another (6)

with the intent to commit a felony therein.” Id. at 292, 636 S.E.2d at 821 (quoting

State v. Rick, 342 N.C. 91, 101, 463 S.E.2d 182, 188 (1995)). This Court found a

defendant standing in the doorway of a house is evidence of his intent to commit a

burglary, where he would have to break and enter another’s house. Key, 180 N.C.

App. at 293, 636 S.E.2d at 822. This Court also found this action was an overt act,

beyond mere preparation, to commit a burglary. Id. However, such behavior is

inapplicable to support the conviction of an attempted sexual offense, because

breaking and entry into a dwelling is not an element of the statutory sexual offense.

See Minyard, 231 N.C. App. at 616, 753 S.E.2d at 185.

 The majority’s opinion also purports to distinguish the facts and holding in

State v. Walker, by asserting that case was decided based on the defendant’s intent,

which was not demonstrated by an overt act. 139 N.C. App. at 518, 533 S.E.2d at 861.

However, intent is often proved through a finding of an overt act. See Key, 180 N.C.

 7
 STATE V. BAUGUSS

 TYSON, J., concurring in part and dissenting in part

App. at 293, 636 S.E.2d at 822. Intent, standing alone without an overt act, is not an

attempt.

 Evidence of an overt act is required to support an attempt conviction because

“without it there is too much uncertainty as to what the [defendant’s] intent actually

was.” State v. Bell, 311 N.C. 131, 141, 316 S.E.2d 611, 616 (1984) (citation omitted).

While we may agree defendant may have planned and intended to perform sexual

acts on Dee at some point, the State’s evidence is insufficient to prove he intended

and attempted to do so on the day he was arrested.

 Defendant came over to A.M.’s house two days after had he made his request

to A.M. to dress Dee in a specific manner. No evidence was presented concerning how

Dee was dressed the day defendant was arrested or showing defendant had or

attempted any contact with her. Intent, often proven through overt acts, must

correlate to “the time of the offense at issue.” See Shue, 163 N.C. App. at 62, 592

S.E.2d at 236.

 The State failed to present any substantial evidence of an overt act to support

the conviction that defendant attempted to commit a sexual offense on Dee in A.M.’s

house. I disagree with the conclusion of no error in the trial court’s denial of

defendant’s motion to dismiss this attempt charge. This conviction should be

reversed and the case remanded for resentencing. I concur in the majority’s opinion’s

holding of no error for the defendant’s other convictions, but respectfully dissent from

 8
 STATE V. BAUGUSS

 TYSON, J., concurring in part and dissenting in part

the conclusion of no error in the defendant’s conviction of an attempted sexual offense

at A.M.’s house.

 9