An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1031

Filed 19 November 2025

Henderson County, Nos. 21CR000208-440, 22CR000419-440, 22CR000420-440, 22CR000421-440, 22CR000425-440, 22CR000426-440, 22CR000427-440, 22CR000428-440

STATE OF NORTH CAROLINA

v.

JIMMY JAMISON

Appeal by defendant from judgments entered 18 May 2023 by Judge William H. Coward in Henderson County Superior Court. Heard in the Court of Appeals 27 August 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Lauren Clemmons, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Sterling Rozear, for defendant-appellant.*

ZACHARY, Judge.

Defendant Jimmy Jamison appeals from the trial court's judgments entered upon a jury's verdicts finding him guilty of two counts of statutory sex offense with a child 15 years or younger, three counts of statutory rape of a child 15 years or

younger, and three counts of human trafficking of a child victim. On appeal, Defendant argues that the trial court erred by denying his motion to dismiss the human trafficking charges, or in the alternative, that the court committed plain error by not properly instructing the jury on the human trafficking charges. After careful review, we conclude that Defendant received a fair trial, free from error.

## I. Background

On 6 July 2021 and 26 October 2022, a Henderson County grand jury indicted Defendant for several sexual-abuse charges.

Defendant's case came on for jury trial on 15 May 2023 in Henderson County Superior Court. At trial, the State introduced evidence tending to show the following: In 2018, when "Sarah"[1] was 13 years old, her mother "kicked [her] out" of the house and she went to live with her third cousin, Lee Anne. Lee Anne was addicted to crack cocaine and Sarah often accompanied her to purchase drugs.

In 2019, Lee Anne met Defendant in a Dollar General parking lot to purchase crack cocaine and Defendant saw Sarah sitting in the car. After the encounter, Defendant—who was in his 50s—messaged Lee Anne about Sarah. He asked who Sarah was, said Sarah was "cute," and stated that "he wanted to have sex with [Sarah]." Lee Anne told Defendant that Sarah was 14 years old. At first, Sarah declined to have sex with Defendant, saying that the idea was "disgusting."

---

[1] To protect the identity of the juvenile, we use the pseudonym to which the parties stipulated. *See* N.C.R. App. P. 42(b).

Defendant then offered to provide Lee Anne with crack cocaine if she would arrange for Sarah to have sex with him. He also agreed to provide Sarah with marijuana and money for engaging in sexual acts with him. Consequently, Sarah relented and agreed to have sex with Defendant in exchange for his provision of crack cocaine for Lee Anne and "marijuana and money" for herself. Between October 2019 and March 2020, Lee Anne repeatedly delivered Sarah to Defendant's house or to a motel to have sex with Defendant; as promised, Defendant provided Lee Anne with crack and Sarah with money and marijuana at each encounter.

In March 2020, Sarah disclosed this sexual abuse to her adult stepsister, Brittany. Brittany gained temporary guardianship of Sarah and contacted the Rutherford County Department of Social Services. A Child Protective Services ("CPS") agent conducted an investigation, during which Sarah reported that she and Defendant had repeatedly engaged in sexual activity; that "she had been offered alcohol and marijuana" during one of the encounters and crack cocaine in another; and that at each meeting Defendant gave her marijuana and money, "which ranged from [$10] to $20." Sarah also submitted to a recorded forensic interview that was admitted at trial and published to the jury as State's Exhibit Number 1.

Defense counsel made a motion to dismiss the charges at the close of the State's evidence, which the trial court denied.

On 18 May 2023, the jury returned its verdicts finding Defendant guilty of all charges. That same day, the trial court entered judgments against Defendant

sentencing him to five consecutive terms of 400 to 540 months' imprisonment in the custody of the North Carolina Department of Adult Correction for each of his convictions for statutory sex offense with a child 15 years or younger and statutory rape of a child 15 years or younger; and three consecutive terms of 300 to 420 months' imprisonment for each of his convictions for human trafficking of a child victim. The court also entered permanent no-contact orders in connection with each conviction, ordered Defendant to register as a sex offender, and ordered that the Department of Adult Correction conduct a sex-offender risk assessment of Defendant.

Defendant gave oral notice of appeal.

## II. Discussion

Defendant argues on appeal that the trial court erred by denying his motion to dismiss for two reasons: 1) N.C. Gen. Stat. § 14-43.11 (2023) "is unconstitutionally vague"; and 2) "there was insufficient evidence he engaged in human trafficking." Defendant also argues that, alternatively, the court committed plain error in its jury instruction on the charges of human trafficking such that there "was a confusing mix of various instructions that still managed to omit essential elements of the offense of human trafficking."

### A. Motion to Dismiss

Defendant contends that the trial court erred in denying his motion to dismiss "because [N.C. Gen. Stat.] § 14-43.11 is unconstitutionally vague" and "because there was insufficient evidence he engaged in human trafficking."

**1. Constitutionality of N.C. Gen. Stat. § 14-43.11**

Defendant first contends that his "convictions for human trafficking must be vacated because [N.C. Gen. Stat.] § 14-43.11 is unconstitutionally vague." He "concedes that no constitutional challenges were raised below," leaving this argument unpreserved, but requests that we review this issue under N.C.R. App. P. 2 "due to the fundamental importance to both the present case and the law of our state."

"Under Rule 2, this Court may suspend the Appellate Rules to prevent manifest injustice to a party, or to expedite decision in the public interest." *State v. Griffin*, 298 N.C. App. 85, 93, 914 S.E.2d 8, 13 (2025) (cleaned up); *see also* N.C.R. App. P. 2. Rule 2 is a discretionary rule "which relates to the residual power of our appellate courts to consider, in exceptional circumstances, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court and only in such instances." *Griffin*, 298 N.C. App. at 93, 914 S.E.2d at 13 (cleaned up). "The exercise of Rule 2 [i]s intended to be limited to occasions in which a fundamental purpose of the appellate rules is at stake, which will necessarily be rare occasions." *Id.* (cleaned up).

Defendant has failed to demonstrate the "exceptional circumstances" meriting suspension of our appellate rules. *Id.* (citation omitted). Accordingly, in our discretion, we decline to invoke Rule 2 to review Defendant's unpreserved argument on direct appeal.

**2. Sufficiency of the Evidence**

Defendant also asserts that the trial court erred by denying his motion to dismiss because "[t]here was insufficient evidence [he] intended for Sarah to be 'held in sexual servitude.'"

a. Preservation

We note that while Defendant properly made a motion to dismiss at the close of the State's evidence, a review of the transcript reveals that he did not renew his motion at the close of all evidence. Our appellate rules provide that if a defendant makes a motion to dismiss "after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, [the] defendant's motion for dismissal . . . made at the close of the State's evidence is waived." N.C.R. App. P. 10(a)(3). "Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal." *Id.*

Here, Defendant did not present any evidence. "[W]hen a defendant puts on no evidence, the motion to dismiss must be made at the close of the State's evidence." Elizabeth Brooks Scherer & Matthew Nis Leerberg, *North Carolina Appellate Practice and Procedure*, § 4.03[7][a][ii] (2022); *see also State v. Juran*, 294 N.C. App. 81, 84, 901 S.E.2d 872, 876 (2024) ("Under Rule 10(a)(3),[ ]a defendant in a criminal case may not make the sufficiency of the State's evidence at trial the basis of his issue on appeal unless he made a motion to dismiss at trial. The motion to dismiss may be made at the close of the State's evidence and/or at the close of all evidence." (citation omitted)). Accordingly, Defendant has preserved this issue for appeal by making a

motion to dismiss at the close of the State's evidence.

b. Standard of Review

"Our Court reviews the trial court's denial of a motion to dismiss de novo." *State v. Bauguss*, 265 N.C. App. 33, 36, 827 S.E.2d 127, 130 (2019) (cleaned up and italics omitted). "Upon [the] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion [wa]s properly denied." *Id.* (citation omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Darr*, 283 N.C. App. 259, 263, 872 S.E.2d 608, 613 (2022) (citation omitted). "The evidence is to be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom." *Id.* at 263–64, 872 S.E.2d at 613 (cleaned up). "Put another way, if there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." *State v. Gillard*, 386 N.C. 797, 832, 909 S.E.2d 226, 258 (2024) (cleaned up). "The terms 'more than a scintilla of evidence' and 'substantial evidence' are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary." *Id.* (citation omitted).

"[I]f the record developed at trial contains substantial evidence, whether direct

or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Blagg*, 377 N.C. 482, 488, 858 S.E.2d 268, 273 (2021) (citation omitted). "Because evidence in the record supporting a contrary inference is not determinative on a motion to dismiss, circumstantial evidence may withstand a motion to dismiss and support a conviction *even when the evidence does not rule out every hypothesis of innocence*." *Id.* (cleaned up).

c. Analysis

Defendant argues that the trial court erred in denying his motion to dismiss because "[t]he State failed to present evidence [he] intended that Sarah be 'held in sexual servitude,' " which he contends "implies both the control of another and some amount of time." We disagree.

Our General Statutes provide that:

> A person commits the offense of human trafficking when that person (i) knowingly or in reckless disregard of the consequences of the action recruits, entices, harbors, transports, provides, patronizes, solicits, or obtains by any means another person with the intent that the other person be held in involuntary servitude or sexual servitude.

N.C. Gen. Stat. § 14-43.11(a)(i).

"Sexual servitude" is defined, in part, as "[a]ny sexual activity . . . for which anything of value is directly or indirectly given, promised to, or received by any person, which conduct is induced or obtained by coercion or deception or which

conduct is induced or obtained from a person under the age of 18 years." *Id.* § 14-43.10(a)(5). "Coercion" is defined, in part, as "[p]roviding a controlled substance . . . to a person." *Id.* § 14-43.10(a)(1). Marijuana is a controlled substance. *Id.* § 90-94(b)(1).

It is well established that "[a] defendant's intent is seldom provable by direct evidence and must usually be proved through circumstantial evidence." *State v. Bediz*, 269 N.C. App. 39, 42, 837 S.E.2d 188, 191 (2019) (citation omitted).

Here, Defendant argues that the State's case fails because there is no evidence that he "ever recruited, enticed, solicited, or otherwise 'obtained' by any means Sarah *with the intent* that Sarah be 'held in sexual servitude' " or that he "*intended* to either 'maintain control' over Sarah or to 'retain Sarah in his keeping,' nor that he had *any intent* anyone else 'maintain control' over Sarah." (Cleaned up and emphasis added). Characterizing himself as merely "the customer of a minor sex worker," he asserts that "the State's evidence showed only that [he] engaged in sexual activity with Sarah on several occasions." However, we agree with the State that "the evidence, viewed in the light most favorable to the State, was sufficient to show that Defendant 'held Sarah in sexual servitude' by coercing her with marijuana and then providing her with money upon the completion of the sex acts." Defendant's intent to hold Sarah in sexual servitude was demonstrated by his attendant actions.

Sarah testified that she agreed to have sex with Defendant because of the pressure that she felt and his promise to provide her with marijuana and money. And

indeed, at each encounter, after having sex, Defendant gave her "money and marijuana." Lee Anne confirmed that every time Defendant and Sarah engaged in sex acts, Defendant provided Sarah "with weed and money." On the last occasion, Defendant "gave [Sarah] a crack rock to try to get her to smoke it." A CPS agent testified that Sarah reported that "she had been offered alcohol and marijuana" during one of the encounters and that Defendant "gave her marijuana and money, which ranged from [$10] to $20 each time."

When viewed in the light most favorable to the State, the evidence presented provided sufficient evidence for the jury to determine that Defendant held Sarah in sexual servitude because the sexual activity in which she and Defendant engaged was "obtained by coercion"—the marijuana—and Defendant gave her money for engaging in the sexual activity. N.C. Gen. Stat. § 14-43.10(a)(5). Accordingly, the trial court did not err in denying Defendant's motion to dismiss. *See id.* §§ 14-43.10(a)(1), (5), 14-43.11(a), and 90-94(b)(1).

## B. Jury Instructions

In the alternative, Defendant argues that "the trial court committed plain error and [he] must be granted a new trial on the human trafficking charges because the jury was not properly instructed."

### 1. Standard of Review

In criminal cases, certain evidentiary and instructional issues that were not properly preserved by objection at trial and that are not otherwise "deemed preserved

by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4).

Defendant concedes that he "did not object to the jury instructions for human trafficking, and thus the error is not preserved for appellate review." Now, Defendant "specifically and distinctly contend[s]" that "the trial court failed to properly instruct the jury in this case," and he seeks plain-error review. *Id.*

For error to constitute plain error, a defendant must satisfy a three-prong test. "First, the defendant must show that a fundamental error occurred at trial." *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024). "Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict." *Id.* (cleaned up). "Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

"[E]ven when the plain error rule is applied, it is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *State v. Lawrence*, 365 N.C. 506, 517, 723 S.E.2d 326, 333 (2012) (cleaned up).

**2. Analysis**

Defendant argues that "the trial court failed to properly instruct the jury" as

to the charges of human trafficking because "[t]he jury was not required to find essential elements of the offense [he] was charged with committing."

"When reviewing the jury instruction for plain error the instruction must be reviewed as a whole, in its entirety." *State v. Scarboro*, 287 N.C. App. 184, 188, 882 S.E.2d 139, 143 (2022) (citation omitted). "A prerequisite to our engaging in a plain error analysis is the determination that the instruction complained of constitute[d] error at all." *State v. Ballard*, 193 N.C. App. 551, 554, 668 S.E.2d 78, 80 (2008) (cleaned up).

In the instant case, the trial court delivered the following instruction to the jury on the human trafficking charges:

> . . . [D]efendant has been charged with three counts of human trafficking of a minor involving sexual servitude.
>
> . . . .
>
> For you to find . . . [D]efendant guilty of th[ese] offense[s], the State must prove two things beyond a reasonable doubt:
>
> First, that . . . [D]efendant willfully recruited, enticed, or obtained by any means, [Sarah], who was a minor, defined as a person less than 18 years of age.
>
> And second, in doing so, . . . [D]efendant intentionally, by coercion, subjected [Sarah] to any sexual activity for which anything of value was directly or indirectly given.
>
> As used in the North Carolina statute prescribing human trafficking, the term "coercion" includes providing a controlled substance to a person. Marijuana is a

controlled substance.

> Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. You arrive at the intent of a person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw therefrom.

> As to each count, if you find from the evidence, beyond a reasonable doubt, that on or about the alleged date . . . [D]efendant knowingly recruited, enticed, or obtained by any means, a minor, [Sarah], and that in doing -- that in so doing, . . . [D]efendant intentionally, by coercion, subjected [Sarah] to any sexual activity for which anything of value was directly or indirectly given, it would be your duty to return a verdict of guilty.

> If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

Defendant argues that "the instruction given is a strange blend of elements from [N.C. Gen. Stat.] § 14-43.11(a)(i) and (a)(ii)." He further asserts that "the trial court failed to instruct the jury that it must find that [he] recruited, enticed, or obtained Sarah with the *intent* that she be *held in sexual servitude*."

"This Court has recognized that the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." *Id.* at 555, 668 S.E.2d at 81 (citation omitted). Yet, "a trial court's use of pattern jury instructions is encouraged, but not required." *State v. Haire*, 205 N.C. App. 436, 441, 697 S.E.2d 396, 400 (2010). "[T]he court is not required to follow any particular form, as long as the instruction adequately explains each essential element of the offense."

*State v. Fletcher*, 370 N.C. 313, 325, 807 S.E.2d 528, 537 (2017) (cleaned up).

We acknowledge that in this case, the trial court did not fully deliver verbatim the pattern jury instructions for N.C. Gen. Stat. § 14-43.11(a)(i); nevertheless, that is not determinative of error. Rather, Defendant bears the burden of showing that the jury instructions on the charges for human trafficking 1) constituted "a fundamental error"; 2) "that the error had a probable impact on the outcome"; and 3) "that the error is an exceptional case" warranting plain-error review. *Reber*, 386 N.C. at 158, 900 S.E.2d at 786 (cleaned up).

The trial court's jury instructions did not include the specific phrase "with the intent to hold in sexual servitude." However, the instructions included the statutory definition of intent and provided that Defendant should not be found guilty if the State failed to prove beyond a reasonable doubt that "[D]efendant intentionally, by coercion, subjected [Sarah] to any sexual activity for which anything of value was directly or indirectly given." The court clearly instructed the jury as to the requirement of intent as evinced by its inclusion of the definition of intent and the requirement that Defendant have committed the act "*intentionally*." (Emphasis added). Thus, Defendant's argument that "[t]he jury was not instructed that it must find [he] recruited, enticed or obtained Sarah *with the intent* that she be held in sexual servitude" lacks merit.

Defendant's assertion that the instructions "did not require the jury to find that Sarah either was or was *intended* to be *held in sexual servitude*" is similarly

inapt. In the jury instructions, the trial court did not use the phrase "held in sexual servitude," but instead properly defined "sexual servitude." We are unable to conceive of any prejudice to Defendant by the omission in the jury instructions of the phrase "held in sexual servitude"; to be sure, including the definition of "sexual servitude" would appear to be a practical choice which placed Defendant clearly within the proscribed conduct. Moreover, there was ample evidence presented at trial of Defendant's guilt. The State introduced three witnesses at trial—including Sarah—who testified that Defendant promised to provide Sarah with marijuana and money if she would have sex with him and that he did so at each encounter.

Defendant therefore cannot show "a fundamental error" that "had a probable impact on the outcome" of his trial such that "absent the error, the jury probably would have returned a different verdict." *Id.* (cleaned up). We discern no plain error in the trial court's instructions to the jury. Defendant's argument is overruled.

## III.  Conclusion

For the foregoing reasons, we conclude that Defendant received a fair trial, free from error or plain error.

NO ERROR.

Judges WOOD and STADING concur.

Report per Rule 30(e).